# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00222-SCT

*RAUL FONTE AND HELEN FLAMMER*

*v.*

*AUDUBON INSURANCE COMPANY*


| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2008 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN A. SCIALDONE |
| | RYAN ANDREW HAHN |
| ATTORNEYS FOR APPELLEE: | WALKER (BILL) JONES, III |
| | JASON RICHARD BUSH |
| | BRADLEY CLAYTON MOODY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 02/26/2009 |
| MOTION FOR REHEARING FILED: | 03/12/09; DENIED AND OPINION MODIFIED BY ADDING FOOTNOTES 4 & 5 IN PARAGRAPH 9 AND DELETING PARAGRAPH 11 - 05/14/2009 |
| MANDATE ISSUED: | |


**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Raul Fonte and Helen Flammer filed this action against Audubon Insurance Company and other parties in the Circuit Court for the First Judicial District of Harrison County to recover insurance proceeds for the loss of their home following Hurricane Katrina. Audubon filed its Motion for Summary Judgment, which the circuit court granted. Aggrieved, Fonte

and Flammer appeal to us. Finding error, we reverse and remand this case to the circuit court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On August 29, 2005, the newly constructed home of Raul Fonte and Helen Flammer (the Fontes) was reduced to a slab as a result of Hurricane Katrina. This house was located on East Beach Boulevard in Pass Christian. The Fontes maintained three separate insurance policies on their home at the time Katrina struck: (1) a wind-and-hail policy through the Mississippi Windstorm Underwriting Association (MWUA);[1] (2) a federal flood policy; and (3) a homeowner's policy written by State Farm Insurance Company. At the time the Fontes' home was destroyed, Audubon Insurance Company (Audubon) was handling claims for MWUA.

¶3.     Audubon entered into a Servicing Insurer Agreement with MWUA effective March 2005 and signed an extension of the agreement through 2007. Under the Servicing Insurer Agreement, Audubon agreed to provide service on MWUA polices such as issuing policies on behalf of MWUA, adjusting claims, and providing full-claim supervision. Audubon contracted with independent adjusting firms, in this case FARA Catastrophe Services (FARA), to assist in the adjusting process.

---

[1]The Mississippi Windstorm Underwriting Association (MWUA) was established by the Mississippi Legislature in 1987 to provide insurance coverage against wind and hail to residents of the Mississippi Gulf Coast. Miss. Code Ann. § 83-34-1 to 83-34-39 (Supp. 2008). MWUA is responsible for the issuance of policies; however, once MWUA determines a policy should issue, a member company acts as a servicing insurer and provides service on the policy. Audubon was the servicing insurer in this case.

¶4.     John Jay and Deanie Diamond[2] were the FARA adjusters who investigated and adjusted the Fontes' claim under their wind-and-hail policy.  On February 4, 2006, Jay prepared his final report, which concluded that only the second-story portion of the Fontes' home was damaged by wind; and that the first floor of the property was destroyed by storm surge and thus was not covered under the Fontes' wind-and-hail policy with MWUA. Shortly thereafter, AIG Claims Service, acting on Audubon's behalf, sent a letter to the Fontes stating "payment is being made in the amount of $201,402.21, which is the damage determined to be caused by the peril of windstorm ([t]he only peril covered by your policy)." On or about February 16, 2006, payment was sent to the Fontes in the amount of $171,402.21 for windstorm damage to their home and carport and $30,000 for windstorm damage to the contents.

¶5.     The Fontes' wind-and-hail policy had a coverage limit for the dwelling of $400,000 and $30,000 for personal property.  The Fontes received the policy limit of $140,000 under their federal flood policy.  The Fontes filed suit against State Farm Fire and Casualty Company, MWUA, Audubon, and Steve Saucier, who was the Fontes' State Farm Insurance agent, alleging, *inter alia*, that Saucier did not increase their policy limits as requested when their home went from a construction project to a completed dwelling.  The Fontes further alleged that State Farm's denial of coverage under the Fontes' homeowners' policy was arbitrary.  After the Fontes filed suit, MWUA tendered the remaining limits of the Fontes'

[2]John Jay was the adjuster primarily responsible for the Fontes' claim, and Deanie Diamond, another adjuster for FARA, assisted Jay.

3

policy, and the Fontes dismissed all claims against MWUA and Audubon for the recovery of policy limits. However, the Fontes maintained their claim against Audubon for negligent and arbitrary adjusting tactics, thus reserving their claims for litigation costs, attorney fees, and punitive damages.

¶6.    Audubon filed a motion for summary judgment denying any liability for its handling of the Fontes' wind claim, alleging that: (1) it was an agent for a disclosed principal and was therefore immune from any causes of action arising from negligent claims handling or breach of contract; and (2) its adjustment of the Fontes' claim did not rise to the level of an independent tort. In response, the Fontes argued that: (1) Audubon's contractual assumption of MWUA obligations and the equity rights Audubon held in wind-and-hail policy premiums rendered it a coprincipal with MWUA, therefore subjecting Audubon to claims for simple negligence; and (2) the absolute control Audubon asserted over the scope and methodology of adjuster John Jay's investigation, as well as the method Jay actually employed, were grossly negligent and designed to produce arbitrary results. The Fontes maintained that Jay was given a mandate not to pay one hundred percent of any claims along U.S. Highway 90 in the Gulfport, Pascagoula, and Bay St. Louis areas. The corporate representative of Audubon stated during deposition testimony that if such a mandate was given, then it may have been arbitrary. Following a hearing, the trial court entered an order granting summary judgment in favor of Audubon. From this order, the Fontes appeal to us.

4

## DISCUSSION

¶7.    Today's appeal raises six issues: (1) whether the trial court erred in granting summary judgment in favor of Audubon and dismissing the Fontes' claims against Audubon with prejudice; (2) whether the trial court erred in the standard it applied in granting summary judgment in favor of Audubon and whether it erred in the presumptions or factual issues in favor of the Fontes in granting summary judgment in favor of Audubon; (3) whether the trial court erred in finding that the parties had stipulated that the Fontes' claim was based solely on the gross negligence of Audubon as an agent for a disclosed principal; (4) whether the trial court erred in finding Audubon to be an agent for a disclosed principal versus a co-principal with MWUA; (5) whether the trial court erred in finding Audubon exhibited no conduct which would allow the jury to determine that Audubon had committed arbitrary acts or gross negligence amounting to an independent tort, and further, whether the trial court erred in taking this issue from the jury when there was direct testimony from Audubon's corporate representative to the contrary; and (6) whether the trial court erred in finding that the Fontes' claim was nothing more than a "pocketbook dispute."[3]  Issues three through six all concern the ultimate issue of whether summary judgment was properly granted; therefore, issues one and two will not be independently discussed.  Also, because the relevance of issue

---

[3]By order entered on August 5, 2008, this Court granted MWUA's motion for leave to file an amicus brief, and MWUA's Brief of *Amicus Curiae* was filed the same day.  In arriving at our decision today, we have likewise considered this amicus brief.

three turns on our disposition of issue four, only issue four will be discussed. As to the issues we deem appropriate to discuss, we restate these issues for the sake of clarity.

## I. WHETHER THE TRIAL COURT ERRED IN FINDING AUDUBON TO BE AN AGENT FOR A DISCLOSED PRINCIPAL VERSUS A COPRINCIPAL WITH MWUA.

¶8. In reviewing a trial court's grant or denial of summary judgment, the well-established standard of review is *de novo*. *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007) (*citing Hubbard v. Wansley*, 954 So. 2d 951, 956 (Miss. 2007)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "A summary judgment motion is only properly granted when no genuine issue of material fact exists." *Jackson Clinic for Women, P.A. v. Henley*, 965 So. 2d 643, 649 (Miss. 2007) (*citing PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 49 (Miss. 2005); *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000)). "[T]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." *One South*, 963 So. 2d at 1160; *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 (Miss. 2007) (*quoting Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006)). "The moving party has the burden of demonstrating that no genuine issue of material fact(s) exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Id.* (*quoting Howard v. City of Biloxi*, 943 So. 2d 751, 754 (Miss. Ct. App. 2006)).

6

¶9.     The Fontes assert that Audubon was a coprincipal[4] with MWUA, and therefore, Audubon can be held liable under a negligence standard.[5]  Audubon was acting as the servicing insurer for MWUA at the time of Hurricane Katrina.  As a servicing insurer, Audubon provided service on MWUA policies by issuing policies on behalf of MWUA, adjusting claims, and providing full claim supervision.  MWUA owned the files, records, and data obtained or created by Audubon in performance of its duties for MWUA.  However, the contract between Audubon and MWUA, the "Servicing Insurer Agreement," does not provide MWUA with surmountable control over Audubon's operations and obligations under the contract.

> This Court has adopted a non-exclusive list of factors for determining whether an agency relationship exists:
>
> > Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and

---

[4]This Court uses the term "co-principal" only with respect to the duties and obligations of adjusting claims, and in no way does this Court deem "coprincipal" to be a "coinsurer."

[5]Although references are made to a negligence standard, based on the Complaint in this case, the Fontes' claim is one of tortious breach of contract.

7

discharge the subemployees and to fix their compensation; and
whether he is obliged to pay the wages of said employees.

*Miller v. R.B. Wall Oil Co.*, 970 So. 2d 127, 131 (Miss. 2007) (*quoting Kisner v. Jackson*, 159 Miss. 424, 132 So. 90, 91 (1931)). "Control and the rights to control are key to determining whether an agency relationship exists." *Id.* at 132 (*citing Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1988)). Although the contract between MWUA and Audubon gives MWUA ownership of "all files, records, and data obtained or created" by Audubon, it does not give MWUA the explicit authority to supervise Audubon's work under the contract. Thus, Audubon is given a great deal of autonomy in performing its duties. As such, a genuine issue of material fact exists as to whether MWUA had the necessary control over Audubon required for a principal-agent relationship to exist.

¶10. Ultimately, this is an issue for a jury to decide. "The determination of whether an agency relationship exists is a question of fact for the jury," and not a question of law. *Id.* (*citing Knight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989)); *Elder v. Sears, Roebuck & Co.*, 516 So. 2d 231, 236 (Miss. 1987). Therefore, as to this issue, we must remand this case to the trial court for determination by a jury.

II. **WHETHER THE TRIAL COURT ERRED IN FINDING AUDUBON EXHIBITED NO CONDUCT WHICH WOULD ALLOW THE JURY TO DETERMINE THAT AUDUBON COMMITTED ARBITRARY ACTS OR GROSS NEGLIGENCE AMOUNTING TO AN INDEPENDENT TORT, AND FURTHER WHETHER THE TRIAL COURT ERRED IN TAKING THIS ISSUE FROM THE JURY WHEN THERE WAS DIRECT TESTIMONY FROM AUDUBON'S CORPORATE REPRESENTATIVE TO THE CONTRARY.**

¶11. The Fontes argue that the conduct exhibited by Audubon rises to the level of an independent tort and that there was enough evidence to send their claim of gross negligence to a jury. "An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991). If an agent does not adhere to this duty, the agent will incur individual liability where the agent's conduct rises to the level of gross negligence. *Conyers v. Life Ins. Co. of Georgia*, 269 F. Supp. 2d 735, 738 (N.D. Miss. 2003).

¶12. In today's case, the record reveals that Audubon, through FARA, assigned adjuster John Jay to the Fontes' claim. Jay stated that he was given the mandate "not to pay one hundred percent of any of the claims along U.S. 90 in the Gulfport/Biloxi/Pass Christian area because of the fact that it was assumed and believed that storm surge, or flood, created a significant part of the total damage." Audubon's own corporate representative agreed that a loss adjustment under the presumption that in no event could the loss be a hundred percent of the policy's limits "may be arbitrary." Further, Jay had no training in meteorology, structural engineering, civil engineering, or other expertise for differentiating between wind and water damage. Audubon also failed to provide Jay with standard meteorological data, a consulting meteorologist, or any other consulting expert in adjusting the Fontes' claim.

¶13. In *State Farm Mutual Automobile Insurance Company v. Grimes*, 722 So. 2d 637 (Miss. 1998), this Court addressed the issue of punitive damages for denial of an insurance claim, determining that:

[t]he issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:

1. The insurer lacked an arguable or legitimate basis for denying the claim, *and*

2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.

*Id.* at 641 (emphasis in original). *See also* **Jenkins v. Ohio Cas. Ins. Co.**, 794 So. 2d 228, 232-33 (Miss. 2001).

¶14. The Fontes' adjuster, Jay, made an arbitrary determination that he was "going to adjust this claim based on the top half of the home being damaged by wind," and he found it correct to say "that this estimate did not take into account possible damage to the lower portions of the home that would have been caused by the loss of the roof or breaking of the windows on the upper portion of the home from the ingress of rainwater or wind-driven water." Jay's determination was made with limited expertise, without meteorological data, without a consulting expert, and based on the instruction not to pay one hundred percent of the Fontes' policy limits. Whether an arguable or legitimate basis for denying the Fontes' claim existed for Audubon's decision not to pay the policy limits must be examined by a jury to determine if there existed a gross and reckless disregard for the Fontes' rights.

¶15. The trial court erred in finding that Audubon exhibited no conduct which would allow the fact finder to determine that Audubon had committed acts of gross negligence amounting to an independent tort. Thus, summary judgment was improperly granted on this issue.

10

Finding that this issue has merit, we must remand this case to the trial court for determination by a jury.

### III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE FONTES' CLAIM WAS NOTHING MORE THAN A "POCKETBOOK DISPUTE."

¶16.     The trial court's order granting Audubon's Motion for Summary Judgment states that "the uncontradicted facts in this case are that this was a 'pocketbook dispute' regarding the losses covered by the MWUA (wind) policy." In *Cossitt v. Alfa Insurance Corporation*, the insured and the underwriter agreed that the insured's claim for benefits was covered. *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 137 (Miss. 1998). A "legitimate pocketbook dispute existed between the parties as to the amount of med-pay benefits available" under the policy. *Id.* Thus, a "pocketbook dispute" exists when parties are in agreement as to the extent of damage but disagree on the value to be assigned to the damage. This is simply not the issue in our case today, because the parties do not agree on the extent of the damage subject to the Fontes' policy. The Fontes maintain that the first floor of their home incurred substantial damage from wind, while Audubon attributes all of the first-floor damage to storm surge. This clearly is a liability dispute.

### CONCLUSION

¶17.     The trial court erred in granting summary judgment where a genuine issue of material fact exists as to whether Audubon was an agent for a disclosed principal, MWUA. The trial court further erred in granting summary judgment by finding that Audubon had exhibited no conduct which would allow the jury to determine that Audubon had committed gross

11

negligence. Likewise, this case is not a "pocketbook dispute" but a liability dispute. Thus, for the reasons stated, the Harrison County Circuit Court's final judgment is reversed, and this case is remanded to the Circuit Court for the First Judicial District of Harrison County for further proceedings consistent with this opinion.

¶18.   **REVERSED AND REMANDED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**