MAXWELL, J.,
for the Court:
¶ 1. This case involves a dispute between Dr. Bertin C. Chevis and his insurance companies. Chevis purchased two sepa *189 rate policies to cover his office building: (1) a named-perils policy from Mississippi Farm Bureau (Farm Bureau) that excluded windstorm damage and (2) a windstorm and hail damage policy from Mississippi Windstorm Underwriting Association (MWUA). Believing he was under-compensated for his building’s total loss caused by wind damage from Hurricane Katrina, Chevis sued Farm Bureau and MWUA, along with the agents who sold him the two policies and the companies that adjusted his loss.
¶ 2. The circuit court granted Farm Bureau’s motion for summary judgment, finding its policy did not cover Chevis’s wind damage. The circuit court then granted Farm Bureau’s motion to certify the judgment as final against Farm Bureau under Mississippi Rule of Civil Procedure 54(b). We find the circuit court’s dismissal of Farm Bureau under Rule 54(b) made the grant of summary judgment final and ap-pealable. Upon de novo review, we affirm the circuit court’s grant of summary judgment because Farm Bureau’s policy clearly did not cover Chevis’s wind damage.
FACTS AND PROCEDURAL HISTORY
¶ 3. In February 2005, Chevis purchased a “Business Package of Insurance” from Farm Bureau Insurance agents Keath Ladner and Theodore Bilbo. Chevis purchased two separate policies to cover his medical office building: (1) a named-perils policy from Farm Bureau that excluded flood damage and contained an endorsement excluding windstorm and hail damage and (2) a windstorm and hail damage policy from MWUA. Attached to the Farm Bureau endorsement was a notice that the Farm Bureau policy Chevis was purchasing excluded windstorm and hail damage and that MWUA “provides windstorm and hail policies to match with property policies where windstorm and hail perils have been excluded.” Chevis wrote two separate premium checks — one to Farm Bureau for “Hazard Ins.” and one to MWUA for “Wind & Hail Ins.”
¶ 4. On August 29, 2005, Hurricane Katrina’s violent winds damaged Chevis’s building and its contents. Audubon Insurance Group, a subsidy of AIG Claim Services, Inc., adjusted Chevis’s claim of loss’. MWUA compensated Chevis for damage to his building and contents but paid less than full policy limits.
¶ 5. Believing the extent of his damages entitled him to full policy limits, Chevis sued Farm Bureau, MWUA, Audubon, AIG Claim Services, and agents Ladner and Bilbo. He alleged both (1) breach of contract and (2) negligent adjustment by AIG Claim Service.
¶6. Farm Bureau filed a motion for summary judgment, arguing Chevis’s damages were caused by wind, which is clearly excluded under Farm Bureau’s policy. The circuit court granted Farm Bureau’s motion, finding “the Farm Bureau policy clearly and unambiguously excluded damage caused by wind.” Because Chevis’s claims against MWUA, Audubon, and AIG Claim Services were still pending,[1] Farm Bureau moved to amend the circuit court’s judgment and reissue a final judgment under Mississippi Rule of Civil Procedure 54(b). By agreed order, the circuit court granted this motion and entered a final judgment dismissing Chevis’s action against Farm Bureau “pursuant to Rule 54(b).”
*190 STANDARD OF REVIEW
¶ 7. We employ the familiar de novo standard of review to the circuit court’s grant of summary judgment, viewing the facts in the light most favorable to the nonmovant. Fulkerson v. Odom, 58 So.3d 849, 851(7) (Miss.Ct.App.2011) (citing Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999)). “Summary judgment is proper ‘if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ” Id. (quoting M.R.C.P. 56(c)). Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.” Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citing Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss.1988)).
DISCUSSION
I. Finality of the Judgment Under Rule 54(b)
¶ 8. Before delving into why we find the circuit court correctly granted summary judgment in favor of Farm Bureau, we address the dissent’s concern that Farm Bureau did not receive a final judgment.[2]
¶ 9. The circuit court’s grant of summary judgment only affected Farm Bureau and was not directed at the other remaining defendants — MWUA, Audubon, and AIG Claim Services. Under Rule 54(b), a judgment affecting less than all the defendants in a multi-defendant lawsuit is not final except “upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.” M.R.C.P. 54(b). Here, the dissent would take a purely mechanical approach to find the circuit court did not expressly determine there was no just reason for delay. But taking a commonsense, substance-over-form approach, we find the circuit court, by granting Farm Bureau’s Rule 54(b) motion and entering an agreed order finally dismissing Farm Bureau “pursuant to Rule 54(b),” entered a final judgment in a “definite, unmistakable manner.” M.R.C.P. 54(b) cmt.
¶ 10. In Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 900-01 (Miss.1987), the Mississippi Supreme Court — guided by the interpretation by the United States Court of Appeals for the Fifth Circuit of the federal version of Rule 54(b) — rejected a Rule 54(b) certification that satisfied the “purely mechanical test of Rule 54(b) ... by a statement in the judgment that there is no just reason for delay and the expressed direction that final judgment be entered[.]” While the supreme court declared it best practice for the trial court to explain its reason for certification, it did not make an explicit statement necessary, so long as the reason for finalizing the partial summary judgment was clear from the record. Id. at 901.
¶ 11. In Cox, the supreme court could not readily discern from the record why the circuit court finalized the dismissal of one claim against a defendant when the plaintiff still had other pending claims against the same defendant with intertwin *191 ing facts. Id. at 900. Thus, it vacated the appeal. Id. at 901. See also Reeves Constr. & Supply v. Corrigan, 24 So.3d 1077, 1083-84 (¶¶ 14-19) (Miss.Ct.App.2010) (finding it “unclear how the circuit court’s final judgment serves the interests of efficient judicial administration ... [and] unclear why there is no just reason for delay in approving the final judgment” when other factually related claims were still pending against the same defendant); Myatt v. Peco Foods of Miss., Inc., 22 So.3d 334, 338-40 (¶¶ 9-12) (Miss.Ct.App.2009) (rejecting Rule 54(b) certification despite use of rule’s language because addressing the merits of appeal “would result in piecemeal litigation”); Walters v. Walters, 956 So.2d 1050, 1053-54 (¶¶9-12) (Miss.Ct.App.2007) (rejecting appeal of divorce judgment because unsettled property issues remained and because there was no determination by the chancellor why no just reason to delay appeal until divorce became final). Citing Cox, this court in Walters noted: “If there is nothing about a case that merits a Rule 54(b) judgment, this Court will dismiss the appeal despite a trial court’s mechanical use of the ‘no just reason for delay1 language.” Walters, 956 So.2d at 1054(13).
¶ 12. Here, we are faced with the other side of the coin. If our appellate courts do not rely on the mechanical satisfaction of Rule 54(b)’s requirements when there is no apparent reason to grant a final partial summary judgment, the converse must also be true — that we do not require the mechanical satisfaction of Rule 54(b) when the reason for granting the final partial summary judgment is unmistakably evident from the record.
¶ 13. This is the exact approach taken by the Fifth Circuit, which our supreme court has looked to when interpreting Rule 54(b). E.g., Cox, 512 So.2d at 900-01. In Kelly v. Lee’s Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1219-21 (5th Cir.1990), the Fifth Circuit applied a “practical, common sense interpretation of Rule 54(b)” to determine that a district court had entered a final partial judgment under Federal Rule 54(b), even though its order failed to state explicitly “no just reason for delay” existed for its entry. Id. After granting partial summary judgment to the defendant, the district court asked the defendant to draft a “54(b) judgment.” Id. at 1219. The judgment was captioned “F.R.C.P. 54(b) JUDGMENT” and directed “that there be final judgment entered pursuant to Federal Rule of Civil Procedure 54(b).” Id. The Fifth Circuit found the order satisfied Rule 54(b)’s requirements and conferred appellate jurisdiction. “When the court recites Rule 54(b) in the order or grants a motion requesting entry of judgment under Rule 54(b), the court expressly incorporates the entire rule by reference and signals its conclusion that the requirements of the rule have been met and entry of partial final judgment is proper.” Id. at 1220. See also id. (discussing Crowley Maritime Corp. v. Panama Canal Comm’n, 849 F.2d 951, 953 (5th Cir.1988), which rejected a “form-over-substance” approach and found sufficient. 54(b) certification despite the district court’s failure to “expressly include the magical language”); EEOC v. Delta Air Lines, 578 F.2d 115, 116 (5th Cir.1978) (concluding, “although the order does not literally track the requirements of the rule, the district court’s wording is sufficiently clear to permit us to be sure the required determination and direction was intended”).
¶ 14. The Fifth Circuit relied on Kelly to find a district court had entered a final partial summary judgment order, despite the plaintiff’s argument that the order failed to contain the formalistic language of Rule 54(b). Ackerman v. Fed. Deposit Ins. Corp., 973 F.2d 1221, 1225 (5th Cir.1992). The Fifth Circuit found “the dis *192 trict court’s order leaves no doubt that it intended to enter a final, appealable, partial judgment under Rule 54(b)” because, not only did the order state it was a “final judgment,” but also because the order “was in response to the [defendant’s] Motion for Entry of Final Judgment under Rule 54(b).” Id.
¶ 15. Applying this practical, commonsense approach, we find circuit court’s intent in issuing the agreed final judgment dismissing Farm Bureau from the case under Rule 54(b) unmistakable. In contrast to Cox, Reeves Construction, Myatt, and Walters, the circuit court entered summary judgment in Farm Bureau’s favor on all claims brought against it based on language in a contract unique to Farm Bureau. As in Ackerman, Farm Bureau specifically requested the circuit court finalize the dismissal under Rule 54(b). Chevis did not object. And the circuit court entered an agreed order stating it was dismissing Farm Bureau “pursuant to Rule 54(b).” Though this order did not contain the magic words “there was no just reason for delay,” the circuit court’s “wording is sufficiently clear to permit us to be sure the required determination and direction was intended.” Kelly, 908 F.2d at 1220 (quoting Delta Air Lines, 578 F.2d at 116).
¶ 16. “The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.” M.R.C.P. 54(b) cmt. The circuit court unmistakably granted Farm Bureau a final judgment under Rule 54(b), conferring this court with appellate jurisdiction. Because the circuit court’s reasons for granting the final judgment are obvious from the record, we see no justice in delaying Chevis’s appeal against Farm Bureau until his claims against other defendants are resolved. Thus, we reach the merits of his appeal.
II. Grant of Summary Judgment in Favor of Farm Bureau
¶ 17. Chevis’s multiple issues raised on appeal boil down to two arguments: (1) the circuit court erred by finding, as a matter of law, Farm Bureau’s policy excluded Chevis’s damage; and (2) Farm Bureau’s liability to Chevis extends outside the coverage of the policy because it sold Chevis a “Business Package of Insurance.” But we find the unambiguous endorsement to the Farm Bureau policy excluded wind damage, which is the only peril Chevis claims damaged his building. We also find Chevis failed to produce any evidence that Farm Bureau is liable under an agency theory for the policy issued by MWUA, a disclosed principal.
A. The Scope of Farm Bureau’s Policy
¶ 18. Because Farm Bureau un-disputably showed its policy did not cover any of Chevis’s alleged uncompensated Katrina damages, Chevis’s breach-of-contract claim fails as a matter of law.[3]
¶ 19. The only cause of damage relevant to this Katrina lawsuit is wind. “Hurricane Katrina unleashed both wind and water forces.” Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 625 (5th Cir.2008). But this is not a wind-versus-water case. In discovery, Chevis only described the damage to his building for which he is seeking compensation in *193 terms of wind, stating: “Hurricane Katrina blew out windows and blew off much of the roof. The building just started to crumble....” He also objected to an interrogatory about flood insurance as outside the scope of discovery because “the property was not destroyed by flood.”
¶ 20. The circuit court correctly held Farm Bureau’s policy “clearly and unambiguously excluded damage caused by wind.” The policy contained the following endorsement:
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
WINDSTORM OR HAIL EXCLUSION
For a premium credit the following is added to the EXCLUSIONS section and is therefore not a Peril Insured Against:
WINDSTORM OR HAIL
We will not pay for loss or damage:
A. Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or
B. Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.
But if the Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Peril Insured Against, we will pay for the loss or damage caused by such Peril Insured Against. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.
¶ 21. Attached to the endorsement was the following notice:
IMPORTANT NOTICE
WINDSTORM OR HAIL EXCLUSION
(ALL PROPERTY POLICIES)
PLEASE READ CAREFULLY. The enclosed Windstorm or Hail Exclusion Endorsement is being added to your policy. This means your property policy through Mississippi Farm Bureau Casualty Insurance Company or Southern Farm Bureau Casualty Insurance Company will not provide windstorm or hail coverage.
The Mississippi Windstorm Underwriting Association provides windstorm, and hail policies to match with property policies where windstorm and hail perils have been excluded.... Your local Farm Bureau agent can procure a Mississippi Underwriting Association Windstorm and Hail Policy for you to insure you against these perils that are being excluded from your Mississippi Farm Bureau Casualty Insurance Company or Southern Farm Bureau Casualty property policy.
Effective the date the Windstorm or Hail Exclusion Endorsement is added to your property policy, we will no longer pay for loss caused directly or indirectly by windstorm or hail regardless of any other cause or event that contributes concurrently or in any sequence to the loss. Direct loss by fire or explosion resulting from windstorm or hail is covered.
¶ 22. Under Mississippi law, Chevis, as policyholder, was legally responsible for knowing his policy excluded windstorm damage. Cherry v. Anthony, Gibbs, Sage, *194 501 So.2d 416, 419 (Miss.1987) (citations omitted) (finding knowledge of contents of insurance policy is imputed to policyholder as a matter of law). And the evidence shows Chevis heeded Farm Bureau’s notice and purchased a separate windstorm and hail damage policy from MWUA, writing a separate check to MWUA that noted in the memo line: “For Wind & Hail Ins.”
¶ 23. On appeal, Chevis argues the endorsement excluding windstorm and hail damage was vague because it did not define “windstorm.” “The initial question of whether the contract is ambiguous is a matter of law.” Benchmark Health Care Ctr., Inc. v. Cain, 912 So.2d 175, 182(17) (Miss.Ct.App.2005) (quoting Lamb Constr. Co. v. Renova, 573 So.2d 1378, 1383 (Miss.1990)). “The fact that a term is not defined in the policy itself does not alone make that term ambiguous.” In re Katrina Canal Breaches Litig., 495 F.3d 191, 207 (5th Cir.2007) (applying Louisiana law). And “[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law.” Cherry, 501 So.2d at 419 (citing Union Planters Leasing v. Woods, 687 F.2d 117, 119 (5th Cir.1982)). Instead, a term is ambiguous if it has multiple reasonable interpretations, either based on the term itself or due to internal conflict within the policy. Miss. Farm Bureau Mut. Ins. Co. v. Walters, 908 So.2d 765, 769 (¶¶ 11-12) (Miss.2005). If a policy is not ambiguous, the court gives effect to its clear and unambiguous meaning. Jackson v. Daley, 739 So.2d 1031, 1041 (¶ 38) (Miss.1999).
¶ 24. “In absence of a definition or limitation of the subject, a “windstorm’ must be taken to be a wind of sufficient violence to be capable of damaging insured property either by impact of its own force or by projecting some object against the property....” Kemp v. Am. Universal Ins. Co., 391 F.2d 533, 534 (5th Cir.1968); see also N.H. Fire Ins. Co. v. Kochton Plywood & Veneer Co., 242 Miss. 169, 176, 134 So.2d 735, 737 (1961) (finding insurer liable for windstorm damage caused by “wind ... of unusual violence”). Through critical of the circuit court’s application of Kemp’s definition of “windstorm,” Chevis offers no other reasonable alternative interpretation of the term. And we find, as a matter of law, there is no reasonable interpretation of “windstorm” that would exclude what Chevis claims caused the damage to his building — hurricane-produced winds. Thus, the circuit court correctly found Chevis failed to make a sufficient showing that his alleged Katrina damages were caused by a named peril other than the expressly excluded windstorm peril.
¶ 25. Chevis also argues the Farm Bureau policy covered wind damage from Hurricane Katrina because the policy covered “named storms.” But there is nothing in the Farm Bureau policy that lists “named storms” among its named perils. Instead, the policy, through the endorsement, expressly stated windstorm damage was not a named peril. It appears Chevis derives the “named storm” language from correspondence from agent Bilbo. Farm Bureau correctly points out this letter, while apparently marked for identification at the summary-judgment hearing, was not made part of the record. Consequently, is outside of our appellate review. Miller v. R.B. Wall Oil Co., Inc., 970 So.2d 127, 130 (¶ 6) (Miss.2007) (quoting Pulphus v. State, 782 So.2d 1220, 1224(15) (Miss.2001)) (confining appellate “review to what appears in the record”). But even were this letter part of the record, apparently the “named storm” language was in specific reference to the MWUA premium, not the terms of the Farm Bureau policy. More important, this type of parol evidence could not be used to alter Farm *195 Bureau’s clear endorsement excluding all windstorms. See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So.2d 1254, 1257 (Miss.1991) (“[A] written contract cannot be varied by prior oral agreements.”).
¶ 26. We agree with the circuit court’s finding that the Farm Bureau policy clearly excluded Chevis’s alleged wind damage.
B. The Scope of Farm Bureau’s Liability
¶ 27. Additionally, contrary to Chevis’s allegations, Farm Bureau had no contractual obligations outside of its policy with Chevis. Chevis argues, because he bought a “Business Package of Insurance” from Farm Bureau, Farm Bureau is responsible for all coverage he purchased from agents Bilbo and Ladner—including the MWUA policy. But Farm Bureau clearly disclosed that it was not providing Chevis coverage for windstorm and hail damage and that such coverage would have to be purchased from MWUA.
¶ 28. It is a longstanding tenant of agency law that an agent who discloses its principal cannot be held liable for the contract entered into with the principal. Kelly v. Guess, 157 Miss. 157, 161-62, 127 So. 274, 276 (1929). Here, Chevis failed to create a factual dispute that he thought he was purchasing windstorm coverage from Farm Bureau. Attached to his complaint was (1) Farm Bureau’s windstorm and hail exclusion, (2) the notice of the exclusion, which highlighted windstorm coverage would have to be purchased through a separate entity, MWUA, and (3) a copy of the separate premium check he wrote to MWUA “For Wind & Hail Ins.” While the notice of the windstorm-exclusion endorsement did offer the assistance of a Farm Bureau agent in procuring windstorm and hail damage coverage, the notice unambiguously stated the coverage would not be purchased from Farm Bureau but instead from MWUA. Id. Because Chevis clearly contracted with MWUA, not Farm Bureau, for windstorm coverage, he cannot claim Farm Bureau, under the guise of an agency theory, breached the MWUA policy.
¶29. Nor can he bring a claim against Farm Bureau for the negligent adjustment of his claims covered by the MWUA policy. Unlike the defendant Audubon Insurance Company in Fonte v. Audubon Ins. Co., 8 So.3d 161, 165-66 (Miss. 2009), the case Chevis relies on to argue Farm Bureau’s agency liability, Chevis presented no evidence that Farm Bureau agreed to take on any of the adjustment or oversight of MWUA’s claims. Cf. id. at 165 (¶ 9) (describing Audubon’s contracted services to MWUA, which included “issuing policies on behalf of MWUA, adjusting claims, and providing full claim supervision”). Neither did Chevis present any evidence AIG Claim Service negligently adjusted a claim covered by Farm Bureau’s policy. Because Chevis failed to establish Farm Bureau had a duty to adjust claims for losses that are covered by the MWUA policy, his negligence claim, like his breach-of-contract claim, fails to survive Farm Bureau’s motion for summary judgment.
¶ 30. For these reasons, we affirm.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J., AND MYERS, J.

. Prior to granting Farm Bureau’s motion for summary judgment, the circuit court entered an agreed order dismissing Ladner and Bilbo.

. Although this court must consider issues concerning its jurisdiction, even when the parties do not raise them, Anderson v. Britton & Koontz Bank, N.A., 55 So.3d 1130, 1131(5) (Miss.Ct.App.2011), we note neither party challenges the finality and appealability of the circuit court's grant of summary judgment to Farm Bureau.

. "In any suit for a breach of contract, the plaintiff has the burden of proving by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that he has been thereby damaged monetarily.” Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992).