# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01063-COA

CHERYL COOGAN AND CRAIG COOGAN                    APPELLANTS

v.

NATIONWIDE PROPERTY AND CASUALTY                    APPELLEE
INSURANCE COMPANY

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2022 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EDWARD D. MARKLE |
| ATTORNEY FOR APPELLEE: | THOMAS LYNN CARPENTER JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 12/12/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT**:

¶1.     Cheryl and Craig Coogan (mother and son) appeal from the order of the Hancock County Circuit Court granting Nationwide's motion for partial summary judgment as to their claims for bad faith and punitive damages arising from damages they allege occurred while their vehicle, insured by Nationwide, was in the possession of a thief.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 11, 2021, Craig Coogan gave a statement to Revell Dixon of Nationwide Property and Casualty Insurance Company describing events that occurred on July 14 and 15, 2021. On July 14, Craig was at a grocery store in Bay Saint Louis, around 9 p.m., when he encountered a stranger who asked him for a ride to the Hollywood casino. With Craig

driving his 2007 Toyota Tacoma truck, they went to the Hollywood casino, and Craig watched the unidentified stranger gamble for a while. Then, at the stranger's request, they went to the Golden Nugget casino in Biloxi. Craig could not provide an explanation, but at some point the stranger ended up with his truck keys, credit card, and cell phone. According to Craig, at some point during the early morning hours of July 15, while making "a scene" trying to get his keys back from the stranger, he was removed from the Golden Nugget. Because they would not let Craig back in the casino, he stayed by his truck until around 10 or 11 a.m., at which point he walked to a store to get some water. Upon his return, he discovered that his truck, along with his cell phone and credit card, were gone. Craig called his mother Cheryl and told her what had happened.

¶3.     Cheryl called the Biloxi Police Department to report the theft. At some point, she called Craig's phone, which was still in the truck. The person who answered said he would leave the truck at the Walmart in Pass Christian. Cheryl went to the Walmart, but the truck was not there. She continued to exchange text messages with the person, asking that he return the truck and its contents. The truck was recovered later that night, around 10 p.m., by the Long Beach Police Department.

¶4.     Cheryl notified Nationwide, her insurance carrier, of the theft. The Coogans, at some point, filed a claim for damages to the truck as a result of the theft.[1] After the truck was recovered, it was taken, at Nationwide's expense, to Copart in New Orleans, an online car-

---

[1] There was no written claim form completed and signed by Cheryl identifying exactly what damage she claimed was caused by the theft. The claim was apparently based on Cheryl's phone call to Nationwide, their internet communications, and phone conversations.

auction company. While there on July 23, 2021, photos were taken, showing damage to the vehicle. Those photos were provided to Rick Peterson, the claims examiner assigned to the Coogans' claim. As part of their investigation of the claim, Nationwide representatives also spoke with Craig and Cheryl concerning the condition of the truck before and after the theft.

¶5.     Nationwide denied the claim based partly on Peterson's opinion that oxidized rust appeared in the photos of the damaged area of the truck, which Peterson said could not have developed only eight days after the theft. That opinion was reinforced by the interviews of Craig and Cheryl, who both acknowledged that the truck had some pre-existing damage.

¶6.     Both Craig and Cheryl admitted that there was prior damage to the passenger side and rear quarter panel, but both contended that the damage was not as bad as what existed after the theft. They claimed the damage to the area below the headlight on the driver's side was the result of the theft. However, Craig told Revell Dixon that he had caused damage to that area a couple of months earlier when he was turning and hit a "metal concrete thing" at a gas station. Cheryl admitted only that the driver's side headlight was broken and replaced before the theft. As to damage to a side mirror, Craig admitted that he had caused the damage to the passenger side mirror by hitting a mailbox or somebody's garbage that "was sticking out of the freaking aisleway. I had to get to work on time, I left." Cheryl argued that because of his mental issues, Craig's statements were not accurate. Nationwide concluded that the damage claimed by the Coogans pre-existed the theft.[2]

---

[2] In their complaint, the Coogans did not claim damages for any collision that may have caused prior damage to the truck. Nationwide maintains that the Coogans did not make any argument for collision coverage until the summary judgment pleadings. Instead, they claimed that all the damage was a result of the theft.

¶7.     The Coogans filed a complaint on September 30, 2021, a little over two months after the theft, for contractual and punitive damages against Nationwide. Nationwide filed a motion for partial summary judgment as to the bad faith and punitive damages claims and for a determination that the Coogans' deductible for their contractual claim was $2,000. In its motion for summary judgment, Nationwide asserted first that it had an arguable basis for its position that the Coogans had failed to show that the damage to the covered vehicle was the result of the theft. In support of its position, Nationwide attached, among other items, photos of the truck, Craig's deposition, transcript of Craig's recorded statement, and Peterson's affidavit. Second, Nationwide argued that the Coogans had produced no summary judgment proof that it had "committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights."

¶8.     The Coogans countered by arguing that Nationwide had no legitimate basis on which to deny their claim. The Coogans contend that issues of fact were present because the parties' versions of the events are at odds, citing *Cook v. Children's Medical Group P.A.*, 756 So. 2d 734, 739 (¶15) (Miss. 1999).[3] While Nationwide contended that there was damage to the Coogan's vehicle before the theft, the Coogans maintained that the damages for which they sought recovery occurred during the time the vehicle was under the thief's control. According to Peterson's affidavit, "Cheryl Coogan told [Peterson] that the damage to the front grill and side mirrors were pre-existing" and that "there were areas of damage on the

---

[3] "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Miss. Dep't of Wildlife, Fisheries & Parks v. Miss. Wildlife Enforcement Officers' Ass'n Inc.*, 740 So. 2d 925, 929-30 (¶11) (Miss. 1999).

4

truck that were present before the theft, but they were larger now." During discovery, Cheryl denied making some of those statements but admitted that there were some areas of damage to the truck, but she claimed they were just larger after the theft.

¶9. The Coogans also argued that regardless of when or how the damages occurred, they are covered by their Nationwide policy. They argued before the trial court and here on appeal, that

> if the damages occurred during the time the vehicle was under the thief's control, which it did, it is covered under the Comprehensive section of the policy. If the damages occurred as a result of a prior collision, as alleged by Nationwide, the claim is payable under the Collision section of the policy.

The Coogans also argued that the policy has no exclusion for pre-existing damage. As a result, the Coogans contended that Nationwide's failure to pay their claim amounted to an intentional tort deserving of punitive damages.

¶10. After briefing and oral arguments, the circuit court granted Nationwide's motion and dismissed the Coogans' bad faith and punitive damage claims. When the Coogans' trial counsel advised the circuit court that he intended to file an interlocutory appeal from the judgment, the circuit court stayed the case pending resolution of the Coogans' punitive damages and bad faith claims by this Court. The circuit court entered an agreed amended order that its "judgment was a final judgment on the issue of [the Coogans'] bad faith/punitive damage claims and actions and expressly determine[d] that there [was] no just reason for delay and expressly direct[ed] that there be an entry of final judgment on said issues in accordance with M.R.C.P. 54(b)."

## STANDARD OF REVIEW

5

¶11. In *Holloway v. National Fire & Marine Insurance Co.*, 360 So. 3d 671, 674-75 (¶¶8-9) (Miss. Ct. App. 2023), we stated:

> **We review the grant of a motion for summary judgment de novo**, viewing the evidence in the light most favorable to the non-movant. *Karpinsky v. Am. Nat. Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). The movant is entitled to summary judgment if the record evidence "show[s] that there is no genuine issue as to any material fact and that the [movant] is entitled to judgment as a matter of law." *Id.* at (¶10) (quoting M.R.C.P. 56(c)). The non-movant "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting M.R.C.P. 56(e)). In other words, "the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990) (quoting *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990)).
>
> **"In order to pursue a claim for bad faith denial of coverage in Mississippi, the insured bears a heavy burden to prove that its insurer lacked any arguable or legitimate basis to deny such coverage and that the 'insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.'"** *Mut. Assur. Inc. v. Banks*, 113 F. Supp. 2d 1020, 1023 (S.D. Miss. 2000) (quoting *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (¶12) (Miss. 1998)). **Whether there is an arguable basis for denying coverage is a question of law to be decided by the court**. *Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 530 (Miss. 1997).

(Emphasis added). "Partial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal." *Holcomb Dunbar Watts, Best, Masters and Golmon P.A. v. 400 South Lamar Oxford Mad Hatter Partners LLC*, 335 So. 3d 568, 572 (¶7) (Miss. 2022) (quoting *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (¶6) (Miss. 2007)).

## ANALYSIS

¶12. The Coogans raise two basic issues on appeal. First, they contend that the lower court

6

erred by dismissing "the extracontractual bad faith punitive damages claim." Second, they argue that the trial court erred by dismissing their "tort, bad faith claim for extra-contractual damages under *Veasley*."[4] We address these issues below.

> **I.** **Whether the circuit court erred by granting partial summary judgment as to "the extracontractual bad faith punitive damages claim."**

¶13. We first look at the Coogans' burden of proof as to their punitive damage claim. In *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 167 (¶13) (Miss. 2009), the supreme court stated:

> In *State Farm Mutual Automobile Insurance Company v. Grimes*, 722 So. 2d 637 (Miss. 1998), this Court addressed the issue of punitive damages for denial of an insurance claim, determining that:
>
> > [t]he issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:
> >
> > **1. The insurer lacked an arguable or legitimate basis for denying the claim, and**
> >
> > **2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.**
>
> *Id*. at 641 (emphasis in original). *See also Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232-33 (Miss. 2001).

(Emphasis added).

> **A.** **Did Nationwide have an arguable or legitimate basis for denying the theft claim?**

¶14. Based on the photos of the truck after the theft, Peterson's statement in his affidavit that rust was present in the damaged area, and the statements of Craig and Cheryl as to prior

---

[4] *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992).

damage to the truck, we find that Nationwide made a prima facie showing of a reasonably arguable basis for denying the Coogans' theft-damage claim. The burden then shifted to the Coogans to produce sufficient summary judgment proof to demonstrate that Nationwide had no arguable reason for handling their claim as it did. *See Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996).

¶15.    The Coogans filed a response to the motion for summary judgment and attached seventy-two exhibits to their response. The Coogans argued that whether the damage occurred before or during the theft, all the damage was covered by their policy with Nationwide under either the comprehensive or the collision provisions. Nationwide's contention that the damage to the truck "pre-existed" the theft, according to the Coogans, is "their red herring. This is their elaborate scheme to deny this poor lady $7,000 to repair her vehicle." The Coogans also contend that the word "pre-existing" is not found in the policy and that there is no "exclusion" for "pre-existing" damage. They further argued that Peterson had never personally inspected the truck, and what he determined from the photo to be rust could well have been bed liner glue. The Coogans also point out that what Peterson determined to be rust was not in the area of damage; it was only near the damaged area. The Coogans make these same arguments on appeal.

¶16.    In response to the Coogans' contention that all damage to the truck is covered by the Nationwide policy regardless of when or how the damage occurred, Nationwide points to the policy itself. First, had there been damage to the truck as a result of a collision sometime prior to the theft, Nationwide argues the Coogans should have filed a timely claim for any

such damage. The policy reads, in part, as follows:

**PART E-DUTIES AFTER AN ACCIDENT OR LOSS**

We have no duty to provide coverage under this policy if the person seeking coverage fails to comply with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any insured persons and of any witnesses . . . .

The Coogans had not filed a prior collision claim for damage to the truck. Accordingly, if there was damage to the truck from a prior collision that was not "promptly" reported to Nationwide, there may not be coverage for such prior damage. Further, if there was damage from a prior collision, it would be subject to a separate $2,000 deductible. Nationwide argues that the claim at issue is a theft claim and that the complaint concerns the denial of the theft claim. The Coogans raised the issue of a collision claim only in response to the motion for summary judgment.

¶17.    In response to the Coogans' argument that there is no policy "exclusion" for "pre-existing" damage, Nationwide points out that the policy provides coverage for a loss caused by the covered peril, which in this case is theft. Nationwide correctly argues that the Coogans bore the burden of proof to show that the damage claimed was caused by the theft and did not "pre-exist" the theft. In *Mississippi Farm Bureau Casualty Insurance Co. v. Hardin*, 323 So. 3d 1034, 1040 (¶18) (Miss. 2021), the supreme court explained:

"Under 'named perils' coverage, the burden of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against . . . .'" *Corban* [*v. United Servs. Auto. Ass'n*], 20 So. 3d [601,] 619 (¶52) [(Miss. 2009)] (quoting *Lunday* [*v. Lititz Mut. Ins. Co.*], 276 So. 2d [696,] 699 [(Miss. 1973))].

Nationwide's position is that the Coogans have not, *at this point*, met their burden to show that the claimed damage to the truck was caused by the theft.

¶18.    As to the contention that Peterson's affidavit was wrong concerning "rust" in the damaged area of the rear passenger-side quarter panel, the Coogans offered no expert or other witness to dispute this finding. The Coogans did not depose Peterson or any other witness concerning the presence or absence of rust and offered no affidavit in this regard. Peterson's affidavit stands unrebutted.

¶19.    Nationwide was granted summary judgment as to punitive damages, but the underlying contract claim is still before the trial court. Nationwide maintains that its dispute with the Coogans relates only to the value of the Coogans' claim for theft damages to the truck. Nationwide admits that the policy provides coverage to the Coogans for any damage to the truck caused by the theft. Our courts have often said that a legitimate dispute concerning the value of a claim, or "pocketbook dispute," cannot give rise to punitive damages. *See Rudd v. State Farm Fire and Cas. Co.*, 295 So. 3d 579, 585 (¶20) (Miss. Ct. App. 2020); *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 137 (¶21) (Miss. 1998); *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321, 322 (Miss. 1980).

¶20.    After our de novo review of the record in this matter, we find that Nationwide had an arguable basis to support its handling of the Coogans' theft claim.

### B.    Did Nationwide commit a wilful or malicious wrong, or act with gross and reckless disregard for the Coogans' rights?

¶21.    The second part of the claim for punitive damages requires that the Coogans show that Nationwide's handling of their claim amounts to an independent tort. However, in *Windmon*

10

*v. Marshall*, 926 So. 2d 867, 873 (¶24) (Miss. 2006), in its discussion of what constitutes an arguable basis for the denial of a claim, the supreme court stated:

> We find Farm Bureau's conduct was not bad faith because there was a valid and arguable reason to deny the uninsured motorist claim. An arguable reason has been defined by this Court as 'nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort.' *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992) (quoting *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So. 2d 927, 930 (Miss. 1987)).

Because we find that Nationwide had an arguable basis to support its handling of the claim, we find that Nationwide's conduct does not rise to the level of an independent tort.

**II.    Whether the circuit court erred by failing to allow the Coogans' *Veasley* damage claims to be considered by a jury.**

¶22.    The Coogans also contend that the circuit court "erred by failing to allow the *Veasley* bad faith claims from being considered by a jury because such claims involve questions of material fact which only a jury can resolve." The Coogans note that it is unclear whether the circuit court actually dismissed their *Veasley* claims, but they argue that if the circuit court did in fact dismiss those claims, the court committed error in so doing.

¶23.    We first clarify what is meant by "*Veasley* claims." The facts in *Veasley* are very different than these in the case at bar. In August 1985, Teretha Veasley purchased a life insurance policy from Universal Life Insurance Company. *Veasley*, 610 So. 2d at 291. Her mother, Martha Veasley, was the sole beneficiary. *Id*. Upon completion of the application, Teretha paid one premium of $7.29. *Id*. Subsequently, Teretha was informed that the policy had been approved, but with a higher risk rating that would require monthly premiums in the amount of $10.76. *Id*. The first premium in the higher amount was due on September 18,

11

1985, but it was never paid. *Id*. After the due date of a premium not paid, the policy provided that it would remain in effect for a thirty-one-day grace period. *Id*. Teretha died on October 18, 1985, due to complications from childbirth. *Id*.

¶24.    Martha Veasley gave the policy to Viola Malone at Malone Funeral Home. *Id*. Malone was also an agent for Universal. *Id*. Malone agreed to submit the claim to Universal, use the proceeds to cover the cost of Veasley's funeral, and remit the balance to Martha. *Id*. Malone contacted Universal and was told the coverage was in effect. *Id*. Unfortunately, for reasons not explained in the record, Malone did not submit the claim packet to Universal until July 1, 1986. *Id*.

¶25.    Due to mistakes in the handling of the claim, it was first denied in a written notice on July 16, 1986. *Id*. After several contacts between the Veasley family and after their attorney sent a letter to Universal questioning the reason for the denial of the claim, Universal advised Veasley's attorney on September 12, 1986, that a mistake had been made and that the claim would be paid promptly. *Id*. at 292. On September 26, 1986, a $1,458 check was mailed to Malone Funeral Home, and the balance due under the policy was mailed to Veasley. *Id*.

¶26.    The funeral home cashed the check, but on the advice of her attorney, Veasley tore her check in half and mailed it, with a letter asserting a bad faith claim, back to Universal. *Id*. The complaint contained claims of tortious breach of contract, fraud in the inducement, and breach of fiduciary duty. *Id*. In addition to contractual and punitive damages, Veasley also sought extra-contractual damages for emotional distress caused by Universal's mishandling of her claim. *Id*.

12

¶27. The matter went to trial, and the jury awarded Veasley $3,052.76 as the balance due under the contract, $500 for actual extra-contractual damages, and $175,000 in punitive damages. *Id*. On appeal, the supreme court found that the handling mistake did not constitute an arguable reason to deny a just claim. *Id*. at 293-94. However, the court found that the evidence was insufficient to show that "the acts of the defendant were willful or grossly negligent, as opposed to an inadvertent calculation due to inattention and substitute personnel handling the claim." *Id*. at 294. Therefore the court reversed and rendered the award for punitive damages. *Id*. at 296.

¶28. As to the jury's award of $500 for extra-contractual damages, the supreme court stated:

> *Some justices on this court have suggested that extra-contractual damages ought be awarded in cases involving a failure to pay on an insurance contract **without an arguable reason** even where the circumstances are not such that punitive damages are proper. Pioneer Life* [*Ins. Co. of Ill. v. Moss*, 927,] 932 [(Miss. 1987)]. (Sullivan, J., concurring, joined by D. Lee, Prather and Robertson, JJ.). Applying the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries.
>
> In the instant case, while not voluminous, evidence existed to support Veasley's contention that the refusal of Universal Life to pay the claim cause her worry, anxiety, insomnia, and depression. Additionally, she experienced difficulty in coping with daily life and children, her grandchildren, in particular. Veasley stated that she did not have any of these emotional problems prior to her contact with Universal. Thus, the amount awarded by the

13

> jury for Veasley's emotional distress was no more than just compensation for her claims which, although contested, were presumably credited by the jury.

*Veasley*, 610 So. 2d at 295 (emphasis added). While the supreme court found that Universal *did not have an arguable basis to deny the claim* and denied punitive damages, the supreme court did allow extra-contractual damages for emotional distress caused by the denial of Martha Veasley's claim. Subsequent cases have confirmed that "*Veasley* claims" for extra-contractual damages are not available where the insurer had an arguable basis for the denial of the claim. *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (¶28) (Miss. 2012); *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 451 (5th Cir. 2008).

¶29.    In the present case, the complaint sought damages for, among other things, "physical and mental anguish" and "mental pain and suffering." The phrase "*Veasley* damages" is not mentioned in the complaint, the motion for summary judgment, or the response to the motion for summary judgment. The motion for summary judgment did, however, seek the dismissal of "the bad faith and punitive damages claims." The trial court's amended order addressed Nationwide's motion for partial summary judgment as to "the extracontractual bad faith punitive damages claim." The order specifically stated that the "Plaintiffs' claims on bad faith and punitive damages are dismissed." Because we find that Nationwide had an arguably reasonable basis to support its handling of the Coogans' theft claim, we also find that the trial court did not err by dismissing their *Veasley* claims.

## CONCLUSION

¶30.    We find that the trial court did not err by granting summary judgment as to the Coogans' extra-contractual bad faith and punitive damages claims. We remand to the circuit

14

court for further proceedings as to the contractual claims.

¶31.    **AFFIRMED AND REMANDED.**

     **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND SMITH, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  LAWRENCE, J., NOT PARTICIPATING.**