ROBERTSON, Presiding Justice,
for the Court:
Mavis W. Stacy, et al., royalty and mineral interest owners, appeal from an Order of the Circuit Court of the First Judicial District of Hinds County, Mississippi, finding that an order of the Oil and Gas Board reforming a 640-acre gas drilling unit to an 80-acre oil drilling unit was supported by substantial evidence.
Tomlinson Interests, Inc., et al., (TII), cross-appeal because the Court held that, while the order of the Board was supported by substantial evidence, nevertheless it was void because the Board did not specifically find that the reformation of the 640-acre gas drilling unit to an 80-acre oil drilling unit would protect the coequal and correlative rights of all parties owning an interest in the pool. In one place in its order, the Board used the word “unit” rather than “pool”.
In their brief, Stacy, et al., say:
“The principal question is, what lands can be effectively and efficiently drained by the Well and, therefore, should be included in the unit for the Well?”
They contend that the 80-acre oil drilling unit should be an east/west unit, rather than a north/south unit.
The only expert who testified before the Board was geologist Robert Walker, who testified for his employer, TII. His testimony was that the James Sandstone Oil Pool had not been sufficiently drilled to determine the perimeter limits of the pool, that the two exploratory wells showed a fault running in a northwest/southeast line just below the 80-acre north/south drilling unit proposed by TII, composed of the west 40 acres of the E Vz of SW Vi, and the east 40 acres of the W V2 of SW Vi, of Section 36, T 6 N, R 20 W, Lawrence County, Mississippi.
Walker’s opinion was that there would be more wells drilled if there were a north/south unit rather than an east/west unit, as proposed by Stacy, and that the ultimate result would be the better and more efficient development of the entire oil pool and the better protection and safeguarding of the coequal and correlative rights of the owners in the common pool of oil. His further testimony was that if the east/west unit proposed by Stacy, consisting of the N xh of the SW Vi of Section 36 were approved, then it would be most unlikely that any driller would be interested in drilling on an east/west unit composed of the S V2 of the SW Vi of Section 36, because it would be too close to the fault to risk drilling a well on it.
With this uncontradicted evidence before it, the Board, in its Order, found:
“[I]t is necessary for the prevention of waste, to avoid the drilling of unnecessary wells and to protect the coequal and correlative rights of all owners in said lands to require such persons to integrate their interests in said unit and to develop said lands as a drilling unit ....
“The reformation and integration of said unit will promote conservation, prevent waste, prevent the drilling of unnecessary wells, and the coequal and correlative rights of all parties owning an interest in said proposed unit will be protected.”
The Board then ordered:
“[T]hat the aforesaid unit for the above described well be reformed to the 80 acre oil unit above described, and that all interests therein be integrated.”
*95 The lower court was correct in finding that the Board’s order reforming the 640-acre gas drilling unit into an 80-acre north/south oil drilling unit was supported by substantial evidence. See Ohio Oil Co. v. Porter and Skelton, 225 Miss. 55, 82 So.2d 636 (1955).
However, the lower court was in error in finding that the Board’s order was void because the Board did not specifically find that the coequal and correlative rights of the owners in the pool would be protected. The fault that the lower court found with the Board’s order was that the order recited that the coequal and correlative rights of all parties owning an interest in said unit would be protected.
The exact finding of the Board was:
“The reformation and integration of said unit will promote conservation, prevent waste, prevent the drilling of unnecessary wells, and the coequal and correlative rights of all parties owning an interest in said proposed unit will be protected.”
The substance of the Board’s finding was that the coequal and correlative rights of the owners in the common pool of oil would be protected. This is in accord with the “Declaration of Policy” stated in MCA secr tion 53-1-1 (1972):
“It is hereby declared to be in the public interests to foster, encourage and promote the development, production and utilization of the natural resources of oil and gas in the State of Mississippi; and to protect the public and private interests against the evils of waste in the production and utilization of oil and gas, by prohibiting waste as herein defined; to safeguard, protect and enforce the coequal and correlative rights of owners in a common source or pool of oil and gas to the end that each such owner in a common pool or source of supply of oil and gas may obtain his just and equitable share of production therefrom; and to obtain, as soon as practicable, consistent with the prohibition of waste, the full development by progressive drilling of other wells in all producing pools of oil and gas or of all pools which may hereafter be brought into production of such, within the state, until such pool is fully defined.” (Emphasis added).
It would be promoting form over substance to find that the magic word “pool” had to be used, otherwise the order would be ipso facto void.
For these reasons, the order of the circuit court is reversed insofar and it ruled that the order of the Oil and Gas Board was void because it used the word “unit” rather than “pool” in one place in its order, but the order of the lower court is affirmed in all other respects.
AFFIRMED ON DIRECT APPEAL, REVERSED ON CROSS-APPEAL, AND ORDER OF THE OIL AND GAS BOARD REINSTATED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.