# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00468-COA

**ALLEN & SMITH INSURANCE AGENCY INC.**            **APPELLANT**

**v.**

**CALE MERRILL**                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/2023 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | TODD GREGORY CRAWFORD STEPHEN FINLEY BUTTERFIELD |
| ATTORNEYS FOR APPELLEE: | MICHAEL BRANT PETTIS BEN HARRY STONE ALISON G. GETER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 05/20/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1. This appeal is before the Court from an order of the Harrison County Circuit Court. There, Allen & Smith Insurance Agency Inc. (Allen & Smith) sued Cale Merrill for breach of contract, alleging violations of a non-competition agreement. The circuit court found three sections of the agreement ambiguous and unenforceable and granted summary judgment in favor of Merrill. Allen & Smith appeals. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2. On January 5, 2015, Cale Merrill began employment with Allen & Smith Insurance Agency Inc. as an insurance agent or "producer." Approximately a year and a half later, on

June 24, 2016, Merrill signed a producer employment agreement ("the agreement").[1] Among other provisions, paragraph 7 of the agreement contained non-competition and non-solicitation clauses.

¶3. There is some dispute in the record as to how the relationship between Merrill and Allen & Smith soured.[2] On March 27, 2019, Merrill sent a letter, through counsel, expressing that "he ha[d] become very concerned about the operation of [Allen & Smith] and how it affect[ed] his future as a producer[.]" In the letter, Merrill proposed a "very friendly and fair solution for both sides," which allowed Merrill to "take customers for which he has written insurance . . . who desire to leave with him." On April 8, 2019, Allen & Smith terminated Merrill's employment. In May, Merrill took steps to obtain a license and had plans to lease an office in Hattiesburg to form his own insurance business, "Merrill Insurance Agency."[3] According to Merrill, his efforts at opening Merrill Insurance Agency ceased

---

[1] Merrill claims that Allen & Smith approached him and required him to sign the agreement in order for him to continue his employment and receive commissions he had already earned.

[2] Merrill claims he "became concerned with certain business practices of Allen & Smith, including the misappropriation and misuse of client funds[.]" Merrill claims that he feared suspension or revocation of his license, so he informed Allen & Smith that he would no longer continue the employment relationship. Allen & Smith claims the relationship soured because Merrill "inquired about the potential to acquire an ownership interest in the agency[,]" which incurred additional costs for Allen & Smith to facilitate. When Merrill did not follow through with the purchase, Allen & Smith informed him those costs would be charged back to him and claimed Merrill was "unhappy" with that decision.

[3] The office was located over fifty miles from the offices of Allen & Smith in an effort to comply with the agreement Merrill now claims is legally ambiguous and unenforceable.

when Allen & Smith filed the instant suit.[4]

¶4.     On May 15, 2019, Allen & Smith filed a "Verified Complaint for Injunctive Relief and Damages" against Merrill in the Harrison County Circuit Court. Allen & Smith claimed Merrill violated the Mississippi Trade Secrets Act and engaged in tortious interference with business relationships concerning insurers, customers, and employees. Allen & Smith also alleged conversion and breach of contract. On July 8, 2019, Merrill filed an answer and counter-claim with the circuit court.

¶5.     On December 23, 2019, Allen & Smith filed a motion for partial summary judgment. In that motion, Allen & Smith sought a ruling that the non-competition agreement was valid and enforceable on its face. Further, Allen & Smith sought partial summary judgment because Merrill violated the express terms of the agreement—specifically by "opening Merrill Insurance Agency and marketing property and casualty insurance within fifty miles of Allen & Smith's offices in Gulfport and Waveland." Finally, Allen & Smith alleged Merrill violated all five subsections of paragraph 7 of the agreement by taking actions contrary to the non-competition and non-solicitation clauses.[5]

¶6.     On January 15, 2020, Merrill filed his response in opposition to that motion. Merrill argued he opened "Merrill Insurance while under the belief that Allen & Smith would negotiate in good faith with Merrill to allow him to buy his book of business[;] . . .

---

[4]  Shortly thereafter, Merrill joined United Risk Agency as an insurance agent.

[5]  Allen & Smith listed nine other grounds Merrill allegedly violated, all of which were related to violations of the non-competition and non-solicitation covenants of the agreement.

3

[h]owever, due to the buy-out negotiation failing and the filing of Allen & Smith's claims in this case, Merrill never successfully opened and operated Merrill Insurance." Merrill maintained that Merrill Insurance "never issued a policy and never received any type of payment, commission, or consideration from a customer, insurance company, or another insurance agency." Merrill further maintained that the agreement was unenforceable due to its ambiguous and contradictory provisions. Specifically, he claimed that the terms "prospects" and "proposed insureds" were undefined and ambiguous and, therefore, unenforceable. Further, he claimed the geographical limit placed on him was ambiguous and unenforceable. On January 21, 2020, he filed his own motion for partial summary judgment asserting that the non-competition and non-solicitation provisions of the agreement were wholly unenforceable as they are ambiguous and contradictory.

¶7.    On September 23, 2020, the circuit court entered an order denying Allen & Smith's motion and granting Merrill's motion for partial summary judgment. The court held the provisions of subsections 7.b, 7.c, and 7.d were unenforceable because the terms were unclear, ambiguous, and in direct contradiction of each other. The court found that the terms "prospects" and "proposed insureds" were "not defined" and held that "such ambiguity render[ed] the agreement unreasonable and therefore unenforceable."

¶8.    On September 30, 2020, Allen & Smith filed a motion for a new trial or for reconsideration.[6] For purposes of that motion only, Allen & Smith accepted the court's

_____

[6] By the time the motion for a new trial or for reconsideration was filed, Judge Roger Clark, who ruled on the initial motions for summary judgment, had retired. Judge Randi Mueller heard and ruled on the motion for a new trial or for reconsideration.

4

ruling that the terms "prospects" and "proposed insureds" were ambiguous but argued that "summary judgment in favor of Merrill nevertheless constitute[d] error" for several reasons.[7] They essentially argued that the terms' ambiguity was a question that should have been presented to a jury and that the presence of these ambiguous terms "should not prevent enforcement of the remaining, unambiguous terms[.]" On May 6, 2021, a hearing on that motion took place. On May 19, 2021, the court granted that motion in part and denied it in part. The order amended its original language holding the entire agreement unenforceable to instead clarify that "**only**" paragraphs 7.b, 7.c, and 7.d "of the Agreement [we]re contradictory, ambiguous, and therefore unenforceable." The order was also amended "to hold that whether or not Merrill violated paragraphs 7.a. and 7.e. of the [a]greement . . . [wa]s a fact question for the jury to determine."

¶9.    On June 11, 2021, Allen & Smith filed a request for permission to file an interlocutory appeal with the Mississippi Supreme Court. On December 7, 2021, the request for an interlocutory appeal was denied; no reasoning for this ruling was included in the order. On December 15, 2022, Allen & Smith filed a motion to certify the amended order as the final judgment immediately appealable pursuant to Mississippi Rule of Civil Procedure 54(b). On March 28, 2023, the parties submitted an agreed order, and the court adopted that order certifying the amended order as a final, appealable judgment. *See* M.R.C.P. 54(b).

---

[7] On April 12, 2021, Merrill filed a motion for summary judgment arguing that even if the agreement were enforceable, it had expired due to the terms of the agreement because over twenty-four months had passed since Allen & Smith terminated Merrill's employment. On May 20, 2021, that motion was denied as moot due to the court's ruling on the motion for reconsideration.

¶10.    On April 20, 2023, Allen & Smith filed the instant appeal arguing (1) the terms "prospects" and "proposed insured" are unambiguous, (2) even if those terms are ambiguous, any alleged ambiguity presents a question of fact that must be resolved by the jury, (3) the circuit judge erred in discarding the alleged ambiguous terms instead of construing those terms narrowly against the employer, and (4) regardless of any alleged ambiguity, the undisputed facts establish as a matter of law that Merrill violated the unambiguous terms of the provisions of paragraphs 7.a through 7.f[8] of the agreement. This Court on its own raised a Rule 54(b) issue, which will be discussed in our opinion first.

## JURISDICTION

¶11.    To understand the jurisdictional issue, we must consider the procedural background.[9] The trial judge issued the original opinion granting partial summary judgment in favor of Merrill by striking certain provisions of the agreement on September 23, 2020. That order was amended in an order dated May 19, 2021, clarifying that only sections 7.b, 7.c, and 7.d were struck from the agreement.[10] Merrill filed a petition for interlocutory appeal with our supreme court, which was denied on December 7, 2021. Then, in December 2022, the parties submitted a joint motion requesting the judgment be certified as a final judgment in

---

[8]  Allen & Smith's brief references subsections 7.a through 7.f, while the court's amended order references only subsections 7.a and 7.e from the unenforceable subsections of 7.b, 7.c, and 7.d.

[9] *See Harris v. Walters*, 40 So. 3d 657, 660 (¶14) (Miss. Ct. App. 2010) (holding that "[s]ince no Rule 54(b) certification appears in the record, we must dismiss this appeal for lack of jurisdiction").

[10]  Again, the original trial judge assigned to the case, Judge Roger Clark, retired in this time period and was replaced by Judge Randi Mueller.

6

accordance with Rule 54(b). The court granted that motion on March 29, 2023. The notice of appeal was filed on April 20, 2023. The appellant's brief was filed on September 12, 2023, and the appellee's brief was filed on November 15, 2023. The appellant's reply brief was filed on December 29, 2023. An oral argument was conducted before this Court on June 12, 2024. Yet it was not until August 19, 2024 that this Court entered an order "directing the parties to file supplemental briefs regarding whether the Harrison County Circuit Court's judgment in this case is final" as required by Rule 54(b) of the Mississippi Rules of Civil Procedure. *See infra* ¶12. On September 12, 2024, both parties filed a joint motion requesting relief from further briefing. On September 18, 2024, however, both parties filed similar, though not identical, supplemental briefs. On September 25, 2024, this Court entered an order acknowledging the joint motion was now moot.

¶12. The dissenting opinion advocates for dismissal of this case due to certain language not within the "final judgment" in strict compliance with Rule 54(b) of the Mississippi Rules of Civil Procedure. Allen & Smith's December 2022 motion for the court to certify its ruling as a final judgment, unopposed by Merrill, stated that there was "no reason for delay, and all parties agree that an immediate appeal will ultimately allow resolution of this matter most efficiently." The trial court granted the motion, stating in an order dated March 29, 2023, that the motion was unopposed and that the parties had submitted an agreed order rather than having a formal hearing. The order stated the relevant orders were "certified as final and are immediately appealable pursuant to" Rule 54(b). Mississippi Rule of Civil Procedure 54(b) requires and states in pertinent part:

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an **expressed determination that there is no just reason for delay** and upon an expressed direction for the entry of the judgment.

M.R.C.P. 54(b) (emphasis added). The parties failed to include the language "no just reason for delay." The rule appears to require an "express determination," but whether it must be written in the order has never been directly answered by the Mississippi Supreme Court.

¶13. However, the United States Court of Appeals for the Fifth Circuit addressed a similar issue in *Kelly v. Lee's Old Fashioned Hamburgers Inc.*, 908 F.2d 1218 (5th Cir. 1990), which involved a district court case with multiple defendants where the district court granted summary judgment individually for one defendant. *Id.* at 1219.[11] The language missing from the agreed order in the *Kelly* case was the same language missing from the order in this case, "no just reason for delay." *Id.*

¶14. *Kelly* held that "[i]f the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's **unmistakable intent** to enter a partial final judgment under Rule 54(b), **nothing else is required to make the order appealable**." *Id.* (emphasis added). The court did not "require the judge to mechanically recite the words 'no just reason for delay'" and therefore "had jurisdiction to consider the appeal." *Id.* at 1219-20. Crucially, that court held that "[w]hen the court recites Rule 54(b) in the order or grants a motion requesting entry of judgment

---

[11] We recognize that "while Fifth Circuit decisions are highly persuasive, they are not binding authority for this Court." *Lutz Homes Inc. v. Weston*, 19 So. 3d 60, 64 n.6 (Miss. 2009) (citing *Sperry-New Holland, Div. of Sperry Corp. v. Prestage*, 617 So. 2d 248, 256 (Miss. 1993), *superseded on other grounds by* Miss. Code Ann. § 11-1-63(f)(ii))).

8

under Rule 54(b), the court **expressly incorporates the entire rule by reference** and signals its conclusion that the requirements of the rule have been met and entry of partial final judgment is proper." *Id.* at 1220 (emphasis added). The Rule 54(b) judgment was ultimately upheld, and the appeal proceeded. *Id.* at 1221-22.

¶15.    In *Cox v. Howard, Weil, Labouisse, Friedrichs Inc.*, 512 So. 2d 897 (Miss. 1987), our supreme court addressed an issue of whether a Rule 54(b) judgment properly dismissed one count of a counter-claim. The supreme court recognized that it had only addressed the exact issue in *Indiana Lumbermen's Mutual Insurance Co. v. Curtis Mathis*, 456 So. 2d 750, 753 (Miss. 1984), holding that a Rule "54(b) final judgment may be reviewed and reversed [on appeal] if this Court finds the trial judge abused his discretion in entering the final judgment." *Cox*, 512 So. 2d at 899 (citing *Indiana Lumbermen's*, 456 So. 2d at 753). The trial judge's discretion, as the United States Supreme Court put it, "must be exercised in the interest of sound judicial administration, taking into account judicial administrative interests, as well as the equities involved." *Id.* (citing *Curtiss Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980)). In its review, the court stated that it did "not require a trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment" but would "look with disfavor" on a judgment missing the aforementioned. *Id.* at 901. "Indeed, unless the reason the judgment was granted is **clear from the record**, we will not search for a justification, but will vacate the appeal." *Id.* (emphasis added).

¶16.    Both Allen & Smith and Merrill cite *Chevis v. Miss. Farm Bureau Mutual Insurance Co.*, 76 So. 3d 187 (Miss. Ct. App. 2011), in support of this Court having jurisdiction over

9

the instant appeal. The *Chevis* court relied on a finding of a Rule 54(b) order as appealable where "the [trial] court's order le[ft] no doubt that it intended to enter a final, appealable, partial judgment under Rule 54(b)," and "the order was in response to the defendant's Motion for Entry of Final Judgment under Rule 54(b)." *Id.* at 191-92 (¶15) (citing *Ackerman v. Fed. Deposit Ins. Corp.*, 973 F.2d 1221, 1225 (5th Cir. 1992)).

¶17.    Here, the Harrison County Circuit Court judge was quite clear in her intention to enter a "final, appealable, partial judgment" in accordance with Rule 54(b). The order was "in response to" a motion Allen & Smith filed requesting a Rule 54(b) judgment, explicitly stating the matter had been discussed with Merrill, who indicated "no opposition to this motion." The motion for the order recited the case's history and stated there was "no reason for delay, and all parties agree that an immediate appeal will ultimately allow resolution of this matter most efficiently." The circuit judge's order, signed by the judge and both parties, cited Rule 54(b) and "incorporate[d] the entire rule by reference[.]" *Kelly*, 908 F.2d at 1220. And while the judgment did not include the language "no just reason for delay," the order was still clear as to its intent, and no Mississippi Supreme Court case has ever held that language is required before having legal effect. *See Myatt v. Peco Foods of Miss. Inc.*, 22 So. 3d 334, 339 (¶10) (Miss. Ct. App. 2009) (quoting *Cox*, 512 So. 2d at 901).

¶18.    Finding the Rule 54(b) judgment appealable is certainly the "practical, common-sense approach," as the opposing parties are, as rarely seen in appeals, aligned as to the answer to the issue. *Id.* The *Cox* decision noted that "[i]n complex litigation involving multiple claims or multiple parties, or both, Rule 54(b) is helpful because it allows judges to **efficiently and**

10

**fairly** resolve separable claims before protracted litigation is finally resolved." *Cox*, 512 So. 2d at 900 (emphasis added). After all, "[t]he basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." *Id.* (quoting M.R.C.P. 54(b) cmt.). That is precisely the result of the judge granting the Rule 54(b) motion here: to promote judicial efficiency.

¶19. The case before us has been fully briefed by both parties and orally argued in person, not to mention being the subject of supplemental briefs ordered for both parties by this Court. Further, Allen & Smith's motion for a Rule 54(b) judgment was—and remains—completely unopposed by Merrill. To find the judgment is not final because of Rule 54(b) would be needlessly continuing the matter and wasting judicial resources on a nonissue in the process. The case would, as both parties state, merely be sent back to the circuit court for an amended order and then appealed for a second time, further extending the life and cost of this litigation. Further, such an outcome would be inconsistent with Rule 1 of the Mississippi Rules of Civil Procedure's "direction that the rules be construed to secure the **just, speedy and inexpensive determination** of every action." M.R.C.P. 1 (emphasis added). We find the record clear as to the circuit court's intent that the order was intended to be final to allow the parties to appeal those issues.

¶20. Further, dismissing this appeal after resting in this Court for over a year would promote "form over substance" and do nothing to resolve the issues between the parties. Our supreme court has steadfastly held that we do not "exalt form over substance." *Switzer v.*

11

*Switzer*, 460 So. 2d 843, 846 (Miss. 1984); *see also Stacy v. Tomlinson Ints. Inc.*, 405 So. 2d 93, 95 (Miss. 1981); *Keyes v. State*, 549 So. 2d 949, 951 (Miss. 1989); *Wilburn v. State*, 608 So. 2d 702, 705 (Miss. 1992) (citing *Simmons v. State*, 130 So. 2d 860, 864 (Miss. 1961)); *Holladay v. Holladay*, 776 So. 2d 662, 672 (Miss. 2000). In a similar vein, our appellate courts have repeatedly held that we do not require "magic words" in a wide variety of cases. *See Est. of Stevens v. Wetzel*, 762 So. 2d 293, 295 (¶11) (Miss. 2000) ("No magic words are required by" Rule 8 of the Rules of Civil Procedure; only that " pleadings provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought." (quoting *Dynasteel Corp. v. Aztec Indus. Inc.*, 611 So. 2d 977, 984 (Miss. 1992))); *Metalloy Corp. v. Gathings*, 990 So. 2d 191, 196 (¶12) (Miss. Ct. App. 2007) ("We should not be concerned with the recitation of certain magic words, but focused upon the real substance of what the [expert] witness intended to convey[.]" (quoting *Airtran Inc. v. Byrd*, 953 So. 2d 296, 299 (¶5) (Miss. Ct. App. 2007))); *Clark v. State*, 315 So. 3d 987, 996 (¶20) (Miss. 2021) (stating that "magic words are not required under the *Daubert* standard") (citing *Jones v. State*, 920 So. 2d 465, 476 (Miss. 2006) (stating "magic words" are not necessary in the context of MRE 403)); *Pruitt ex rel. Brooks v. Sargent*, 349 So. 3d 729, 732 (¶7) (Miss. 2022) ("'Magic words' are not required to invoke a[n affirmative] defense.") (citing *Heard v. Remy*, 937 So. 2d 939, 942 (Miss. 2006)). We find that the order was intended as a final judgment under Rule 54(b). Therefore, we proceed to the merits of the appeal.

## STANDARD OF REVIEW

¶21. "In reviewing a trial court's grant or denial of summary judgment, the well-established

12

standard of review is de novo." *Waggoner v. Williamson*, 8 So. 3d 147, 152 (¶11) (Miss. 2009) (citing *One South Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007)). "Partial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal." *Id.* at 153 (¶11). Additionally, "[q]uestions of contract construction" are reviewed de novo. *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶16) (Miss. 2012) (citing *A & F Props. LLC v. Madison Cnty. Bd. of Supervisors*, 933 So. 2d 296, 301 (Miss. 2006)).

## ISSUES ON APPEAL

¶22.    Allen & Smith claims that the terms "prospect" and "proposed insured" are not ambiguous and "have well-understood meanings in the context of marketing and insurance sales." Specifically, Allen & Smith maintains that "prospects and proposed insureds are those individuals or entities to which a company specifically markets in hopes of obtaining business." Furthermore, Allen & Smith argues that even if those terms were ambiguous, the circuit judge erred in throwing out paragraphs 7.b, 7.c, and 7.d without giving them a "narrow" meaning. Allen & Smith also argue that any ambiguity in the terms or clauses should be resolved by a jury and not summarily by a court. In response, Merrill argues the terms "prospects" and "proposed insured" are not defined in the agreement and are open to various interpretations. Further, Merrill argues that paragraphs 7.b, 7.c, and 7.d are contradictory when read together and therefore create ambiguity. Finally, Merrill argues the circuit judge did not err in handling the ambiguity because "an ambiguity in a covenant not to compete renders it unenforceable, leaving no questions for the jury to decide."

**ANALYSIS**

¶23.    Our analysis concerns the language contained within subsections 7.b, 7.c, and 7.d, because it is this language the circuit judge found ambiguous, striking it from the agreement. The first subsection 7.b reads as follows:

> b.    PRODUCER covenants and agrees that during the period of his employment hereunder he will not, directly or indirectly, compete with the EMPLOYER in any manner, and for a period of twenty-four (24) months following termination of his employment with the EMPLOYER, he **will not directly or indirectly**, **solicit, attempt to obtain or accept insurance business from any of the EMPLOYER's customers, insureds or prospects,** whether produced or solicited by the PRODUCER or not, nor act in the capacity of any advisor or consultant to said customers, nor aid or assist any other party in the solicitation of insurance business from such customers, insureds and prospects, either directly or indirectly.

(Emphasis added).  By this subsection, Merrill was prohibited from engaging **"directly or indirectly"** in any effort to **"solicit, attempt to obtain or accept insurance business from any of the EMPLOYER's customers, insureds or prospects."**  The terms "customers, insureds or prospects" were never defined.  Applying the plain reading to those terms certainly would seem to include three classes of individuals.  "Customers" are those individuals who have existing business with Allen & Smith.  The term "insureds" is more problematic, as it could denote a class of existing customers but also those who may become customers.  "Prospects" implies those individuals who do not presently have business with Allen & Smith but may be sought out as new customers.  The plain language and reading of subsection 7.b would certainly seem to include all individuals wanting to buy or alter their insurance.  In other words, that would essentially leave Merrill without any potential

insurance agent work he could legally perform and still be in compliance with the agreement.

¶24.   Subsection 7.c provided:

> c.   PRODUCER further covenants and agrees that for a period of twenty-four (24) months after ceasing employment with EMPLOYER, **he will not open or operate an insurance agency** nor enter into agency contracts with any insurer with whom EMPLOYER has an agency contract at the time of termination.  PRODUCER agrees and covenants that he **will not become or seek to become a principal of an insurance agency** engaged in the competitive sale of property and casual insurance during the said **twenty-four** (24) month **period within a 50 mile radius of EMPLOYER'S offices** in Gulfport, Mississippi and Waveland, Mississippi.  **PRODUCER may undertake employment by an insurance agency without violating this covenant provided he is not a principal of the agency.**

(Emphasis added).   This section prohibited Merrill from becoming a principal **"of an insurance agency"** within twenty-four months within a radius of fifty miles of both offices of Allen & Smith.   However, it does state Merrill **"may undertake employment by an insurance agency without violating this covenant provided he is not a principal of the agency."**   There is no reconciliation between how Merrill is supposed to work for another agency as an insurance agent when, pursuant to 7.b, he cannot "solicit, attempt to obtain or accept insurance business " from any "customers, insureds or **prospects**" of Allen & Smith.

¶25.   Finally, subsection 7.d stated:

> d.   It is understood and agreed that except on behalf of the EMPLOYER, **telephonic or written communication by the PRODUCER to a customer of EMPLOYER or proposed insured within the geographical area defined herein shall constitute prohibited activity** in accordance with the terms hereof and, in the event of a breach or threatened breach by the PRODUCER of the provisions of paragraphs 7(a), 7(b) or 7(c) of this Agreement, the provisions hereof may be enforced by an injunction to the full extent thereof, or such lesser extent as a court of competent jurisdiction may deem just and

15

proper for the reasonable protection of the rights and interests of the EMPLOYER, including the recovery of monetary damages.

(Emphasis added). Merrill was to have no **"telephonic or written communication"** with a **"customer of EMPLOYER or proposed insured within the geographical area defined herein."** The only defined geographic area in the agreement is listed in 7.b. That subsection states Merrill "will not become or seek to become" a principal of an insurance business within fifty miles from either Allen & Smith office. It is unclear if "geographical area defined herein" means that fifty-mile radius. To further complicate our interpretation, subsection 7.b has no limiting language of a geographical area at all, meaning its terms could apparently apply to the entire United States. The document as a whole does not further define "geographical area."

¶26. In addition, subsection 7.d adds yet another undefined term to the agreement: "proposed insured." How the term "proposed insured" is different from or inclusive of the terms "prospect" or "insured" as used in subsection 7.b is not articulated within the agreement. In theory, the term "proposed insured" could conceivably include the entire population of those not yet insured by Allen & Smith since anyone not yet insured could be easily classified as a potential "proposed insured." Subsection 7.d prohibits telephone calls or written communications with a "proposed insured" while subsection 7.b prohibits the solicitation or the attempt to sell insurance to "customers, insureds or prospects." Again, the document is silent as to how Merrill can engage in an insurance business as an insurance agent authorized in subsection 7.c but not be able to make telephone calls or have written communication with a class of people listed as "proposed insureds" as stated in subsection

16

7.d. Keeping these possible contradictions and scenarios in mind, we proceed to our analysis.

¶27.   We must first consider that the clauses at hand are restrictive employment agreements. When considering the enforceability of restrictive employment agreements, "we review the entire record and the evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted." *Sta-Home Health Agency Inc. v. Umphers*, 562 So. 2d 1258, 1263 (Miss. 1990) (quoting *Culbreath v. Johnson*, 427 So. 2d 705, 707 (Miss. 1983)).   In the context of agreements such as the one before us, Mississippi courts have repeatedly held that non-competition agreements are "restraint[s] of trade and individual freedom and are not favored by the law." *Landry v. Moody Grishman Agency Inc.*, 254 Miss. 363, 374, 181 So. 2d 134, 139 (1965).[12] "Only when such agreements are reasonable will they be considered valid and upheld by this Court." *Kennedy v. Metropolitan Life Ins. Co.*, 759 So. 2d 362, 364 (¶4) (Miss. 1963) (citing *Frierson*, 247 Miss. at 172, 154 So. 2d at 156).

¶28.   "The validity and the enforceability of a non-competition agreement are largely **predicated upon the reasonableness and specificity of its terms**, primarily, the duration of the restriction and its geographic scope." *Kennedy*, 759 So. 2d at 364 (¶4) (emphasis added) (citing *Empiregas Inc. v. Bain*, 599 So. 2d 971, 975 (Miss. 1992)).   In *Wilson v.*

---

[12] *See also Thames v. Davis & Goulet Ins. Inc.*, 420 So. 2d 1041, 1043 (Miss. 1982); *Texas Road Boring Co. of Louisiana-Mississippi v. Parker*, 194 So. 2d 885 (Miss. 1967); *Redd Pest Control Co. v. Heatherly*, 248 Miss. 34, 157 So. 2d 133 (1963); *Bagwell v. H.B. Wellborn & Co.*, 247 Miss. 564, 156 So. 2d 739 (1963); *Frierson v. Sheppard Building Supply Co.*, 247 Miss. 157, 154 So. 2d 151 (1963); *Donahoe v. Tatum*, 242 Miss. 253, 134 So. 2d 442 (1961); *Wilson v. Gamble*, 180 Miss. 499, 177 So. 363 (1937).

17

*Gamble*, 180 Miss. 499, 177 So. 363, 365 (1937), the Mississippi Supreme Court held that non-competition agreements are only valid "within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent[.]" Therefore, "[t]he burden falls on the employer to draft a non-competition agreement which "clearly delineates the scope of the employee's permissible business activities." *Kennedy*, 759 So. 2d at 367 (¶17). On appeal, the employer bears the burden of proving the terms' reasonableness. *Id.*; *see also Texas Road Boring Co.*, 194 So. 2d at 889.

¶29. "Judicial review and interpretation of a contract involve[] a three-step analysis." *Epperson*, 93 So. 3d at 16 (¶16) (citing *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 752 (Miss. 2003)). "When a court interprets a contract, the first thing that court must do is determine if the contract is ambiguous, and if it is not, then it must be enforced as written." *Cascio v. Cascio Invs. LLC*, 327 So. 3d 59, 71 (¶30) (Miss. 2021) (citing *Epperson*, 93 So. 3d at 16 (¶17)). "Intent is the key in assessing ambiguity." *Id.* (citing *Royer Homes*, 857 So. 2d at 752). "Courts may not infer intent contrary to the text of the contract." *Id.* "In making that determination, the Court must review the express wording of the contract as a whole." *Epperson*, 93 So. 3d at 16 (¶17) (citing *Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (¶8) (Miss. 2010)).

¶30. "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009) (quoting *Amer. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 811-12 (5th Cir. 1997)). "An ambiguous word or

phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Epperson*, 93 So. 3d at 19 (¶26) (quoting *Dalton*, 20 So. 3d at 1232 (¶10)). Furthermore, "[a] contract is ambiguous if it contains conflicting clauses when the contract is read as a whole." *Dalton*, 20 So. 3d at 1232 (¶10).

¶31. The Mississippi Supreme Court was faced with an ambiguous non-competition agreement in *Kennedy v. Metro. Life Ins. Co.*, 759 So. 2d 362, 364 (¶1) (Miss. 2000). In that case, Kennedy was employed by an insurance company. *Id.* As part of his employment contract, Kennedy agreed to the following non-competition agreement:

> 1. During and for 18 months following my voluntary or involuntary termination of employment with Metropolitan, I will not directly or indirectly perform any act or make any statement which would tend to divert from Metropolitan any trade or business with any customer, be it a person, a company, or an organization, to whom I previously sold insurance offered by or through Metropolitan; nor will I advise or induce any customer of Metropolitan, be it a person, a company or an organization, to reduce, replace, lapse, surrender or cancel any insurance obtained from or through Metropolitan.

*Id.* at 367 (¶14). Upon Kennedy's departure from the company, the employer filed suit asserting that Kennedy had violated the non-competition agreement. *Id*. at 364 (¶2). At trial, the chancellor found that Kennedy had violated the agreement and awarded the employer damages for lost premium income. *Id*. Kennedy appealed and argued that he did not violate the agreement and that the non-competition portion of the agreement was unreasonable and unenforceable. *Id*. at (¶3).

19

¶32. The court found the non-competition agreement ambiguous and held the following:

> In the view of this Court, the language of this particular non-compete provision is subject to differing interpretations. One arguable interpretation of the provision is that it prohibits the selling of any insurance by Kennedy to his former customers, even if the customer decided to change his coverage on his own volition. Another reasonable interpretation of the provision, however, is that the provision merely prohibits Kennedy from inducing or advising his former customers to change their coverage to Mass Mutual.
>
> The agreement ambiguously prohibits Kennedy from "perform(ing) any act or make any statement which would tend to divert from Met Life any trade or business with any customer." Given these ambiguities, it is apparent that Kennedy was placed in a very uncertain position when he was contacted by his former customers who were seeking to switch their coverage. Kennedy could have reasonably concluded that, since these former customers had already decided to switch their coverage, and had initiated contact with him, he would not be violating the provisions of the non-compete agreement by accepting their business.

*Id*. at 367 (¶¶14-15). Accordingly, the court reversed the decision and rendered the employer's action against Kennedy dismissed with prejudice. *Id*. at 368 (¶20).

¶33. In addition, this Court dealt with an ambiguous non-competition agreement in *Cain v. Cain*, 967 So. 2d 654 (Miss. Ct. App. 2007). In that case, a nursing home facility and a rehabilitation facility entered into a contract for services. *Cain*, 967 So. 2d at 658 (¶4). That contract contained a covenant not to hire. *Id*. at 664 (¶22). In a suit for breach of contract as to that covenant, the trial court entered a directed verdict finding that the defendant had breached the agreement. *Id*. at 660 (¶10). The defendant appealed. *Id*. On appeal, this Court emphasized that "restrictive covenants are in restraint of trade and individual freedom and are not favorites of the law, but will be enforced when reasonable." *Id*. at 661 (¶13).

¶34. We held that "[t]he validity and therefore, the enforceability of a non-competition

20

provision is largely predicated upon the reasonableness and **specificity of its terms**, primarily, the duration of the restriction and its geographic scope." *Id*. (emphasis added) (citing *Empiregas*, 599 So. 2d at 975). This Court set out how it would analyze the legal issues:

> We must address [the defendant]'s argument that the covenant was ambiguous as to which [of the plaintiff's] employees were subject to the restriction. In determining the meaning of contract terms, **this Court reads the contract as a whole, gives contract terms their plain meaning, and construes any ambiguities against the drafter**. *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990). This Court must give effect to all contract terms if that can reasonably be done. *Id*. But **if contract language is susceptible of two or more reasonable interpretations, then ambiguity is present**. *Miss. Farm Bureau Cas. Ins. v. Britt*, 826 So. 2d 1261, 1265 (¶14) (Miss. 2002). [Defendant] points out that the covenant only stated that [plaintiff]'s "employees are valuable assets" and, later, referred to the covered employees as "personnel employed by [plaintiff]." These terms were ambiguous because it is impossible to discern if they embraced all past, present, or future [plaintiff] employees, or only persons who were employed by [plaintiff] at the inception of the contract, or persons employed by [plaintiff] any time during the term of the contract. . . . Moreover, in the absence of specificity as to which individuals were limited by the covenant not to hire, the covenant operates as an unreasonable restraint on trade. *Empiregas*, 599 So. 2d at 975. As we have found the contract to be ambiguous, we leave for another day the question of whether a more specific covenant not to hire would be valid and enforceable. We affirm the trial court's grant of a directed verdict as to this issue.

*Id.* at (¶18) (emphasis added).

¶35. Here, the word "prospect" contained in paragraph 7.b and "proposed insured" contained in paragraph 7.d are each susceptible to several different interpretations. Examining the context of the entire agreement, a "prospect" or "proposed insured" could mean a current customer of Allen & Smith, a former customer of Allen & Smith, someone not yet insured but who could obtain new or different coverage from Allen & Smith,

21

someone identified in Allen & Smith's records, or every resident within fifty miles of Allen & Smith who could be approached about obtaining coverage from Allen & Smith. There is nothing in the agreement to define or distinguish these terms. There is no persuasive reason as to why the two different terms were used. There is no interpretation of the agreement that would make these terms reasonable. Without the terms "prospect" or "proposed insured" being defined, the plain language of those terms would include the entire class of the insurance-seeking population and would essentially restrain Merrill from any insurance work.

¶36. Further, the subsections are endlessly in conflict and contradict each other. *See Dalton*, 20 So. 3d at 1232 (¶10). For instance, subsection 7.c authorizes Merrill to act as an agent under another principal agency but yet, subsection 7.b prohibits him from engaging in any insurance business with any "prospect" while subsection 7.d prohibits him from telephoning or having written communication with any "proposed insured." How can Merrill work in an insurance agency as an agent and yet not be able to communicate, solicit, or accept insurance business with a "prospect" or "proposed insured?"

¶37. To add further confusion, only one of the three subsections involved in this appeal clearly articulates the geographic area within which Merrill is not to engage in insurance business. Subsection 7.c lists the area as fifty miles within either office of Allen & Smith. The other two subsections do not set forth the fifty-mile geographic area. Subsection 7.d states "**within the geographical area defined**," but it never references subsection 7.c nor a specific area. On the other hand, subsection 7.b, which states Merrill cannot "solicit, attempt to obtain or accept insurance business from any of the EMPLOYER's customers,

insureds or prospects," never mentions geographic area in any form. That would mean he is technically prohibited from working in insurance across the entire United States. Certainly, such a geographic area is unreasonable.

¶38. Given these ambiguities, it is apparent that Merrill was placed in a "very uncertain position" when trying to determine to whom he could sell insurance in order to earn a living. *See Kennedy*, 759 So. 2d at 367 (¶15). Allen & Smith asks this Court to strike the two terms to narrow the agreement and make it reasonable because it would then only apply to Allen & Smith customers and those identified as potential customers. However, this Court is **not** in the business of drafting contracts after the fact. *See Epperson*, 93 So. 3d at 17 (¶18) (recognizing the "right of persons to contract is fundamental to our jurisprudence and absent mutual mistake, fraud, and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties") (citing *Wallace v. United Miss. Bank*, 726 So. 2d 578, 584 (Miss. 1998)). The agreement's terms should have been clear, unambiguous, and reasonable from the onset. More important, if this Court were to strike the ambiguous words, the subsections would still contradict and be in conflict with each other. In *Dalton*, as stated previously, the supreme court stated that a contract is ambiguous if it contains conflicting clauses. *Dalton*, 20 So. 3d at 1232 (¶10).

¶39. The ambiguous words, lack of definitions, and conflicting subsections make the agreement ambiguous when read as a whole. *Id.* Again, the reasonableness of a non-competition agreement is contingent upon whether the agreement "clearly delineates the scope of the employee's permissible business activities." *Kennedy*, 759 So. 2d at 367 (¶17).

23

This includes geographic scope. *Id*. at 364 (¶4). Allen & Smith's agreement with Merrill fails in this regard. Accordingly, we hold that paragraphs 7.b, 7.c, and 7.d are ambiguous, in conflict with each other, and lack the specificity required under our law. Therefore, subsections 7.b, 7.c, and 7.d of the agreement constitute an unreasonable and unenforceable restraint on trade. *See Empiregas*, 599 So. 2d at 975.

¶40. Allen & Smith additionally claims that notwithstanding the ambiguities discussed in this opinion, the undisputed facts establish that Merrill violated subsections 7.a and 7.e, so a jury should have resolved those factual issues. However, this Court finds the three subsections addressed in this appeal are ambiguous and in conflict with each other, thus rendering them unreasonable and unenforceable under Mississippi law. A jury cannot enforce an unreasonable or legally unenforceable section of a contract any more than a court could. Finally, Allen & Smith argues that if the ambiguous words of those subsections are stricken from the agreement, the savings clause in the agreement should keep the other provisions in force. We agree to the extent that the remainder of the agreement remains in force absent the three subsections at hand. In other words, the subsections contain terms which are ambiguous, conflicting, and contradictory to each other. Even with the absence of those unclear and undefined words in subsections 7.b, 7.c, and 7.d, the subsections still conflict with and contradict each other. Therefore, subsections 7.b, 7.c, and 7.d are stricken from the agreement, and this case should proceed in the circuit court on the remainder of the legal issues raised by the parties and not involved in this appeal.

**CONCLUSION**

24

¶41. We hold that the terms used in subsections 7.b, 7.c, and 7.d of the agreement between Merrill and Allen & Smith were ambiguous, and the clauses were contradictory to and in conflict with each other. We therefore hold those subsections unreasonable and unenforceable and affirm the circuit court's decision to strike them from the agreement. We hold that the circuit judge did not err in finding that this ambiguity rendered these three provisions unenforceable against Merrill. Furthermore, this case may proceed on any and all other legal issues still pending in the circuit court that were not subject to this appeal.

¶42. **AFFIRMED.**

**WESTBROOKS, McDONALD, WEDDLE AND ST. PÉ, JJ., CONCUR. CARLTON, P.J., AND EMFINGER, J., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McCARTY, J.; CARLTON, P.J., AND EMFINGER, J., JOIN IN PART II.**

**WILSON, P.J., DISSENTING:**

¶43. The circuit court's grant of partial summary judgment was not properly certified as a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b). Therefore, we lack appellate jurisdiction and should dismiss the appeal. For that reason, I would not address the merits of the appeal; however, I also respectfully disagree with the lead opinion's determination that paragraphs 7.b, 7.c, and 7.d of the parties' agreement are unenforceable in their entirety. Accordingly, I respectfully dissent.

**I.     Appellate Jurisdiction**

¶44. In May 2021, the circuit court granted partial summary judgment in favor of Merrill, ruling that three non-compete or non-solicitation provisions of his employment agreement

25

with Allen & Smith (paragraphs 7.b, 7.c, and 7.d) were ambiguous and unenforceable; however, the circuit court ruled that whether Merrill violated two adjacent provisions of the same agreement (paragraphs 7.a and 7.e) "is a fact question for the jury to determine." All these issues relate to Merrill's efforts to open a new agency after he left Allen & Smith.

¶45.    Allen & Smith filed a petition for permission to file an interlocutory appeal. *See* M.R.A.P. 5. Merrill filed a response, arguing that the circuit court's ruling was correct and, in any event, "not novel or so questionable as to warrant an interlocutory appeal." In December 2021, the Supreme Court denied Allen & Smith's petition. *Allen & Smith Ins. Agency Inc. v. Merrill*, No. 2021-M-00642-SCT (Miss. Dec. 7, 2021) (panel order).

¶46.    Just over one year later, in December 2022, Merrill apparently changed his mind and agreed that there *should* be an interlocutory appeal, and Allen & Smith filed an unopposed, one-page motion asking the circuit court to certify its May 2021 order granting partial summary judgment as "final" pursuant to Mississippi Rule of Civil Procedure 54(b). At the parties' request, the circuit court then entered a one-page "AGREED ORDER" that stated in full:

> This matter comes before the Court on [Allen & Smith's] unopposed Motion to Certify Judgment Under Rule 54(b). In lieu of a formal hearing, the parties have submitted this Agreed Order, which this Court adopts. It is therefore
>
> ORDERED, ADJUDGED AND DECREED that [the order granting partial summary judgment is] certified as final and [is] immediately appealable pursuant to Miss. R. Civ. P. 54(b).

(Citation omitted).

¶47.    The circuit court's order does not satisfy the basic requirements of Mississippi Rule

26

of Civil Procedure 54(b). That rule provides:

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment*.

M.R.C.P. 54(b) (emphasis added). In addition, the Mississippi Supreme Court has stated:

> While the purely mechanical test of Rule 54(b) has been met by a statement in the judgment that there is no just reason for delay and the expressed direction that final judgment be entered, we also urge trial judges to set forth the specific findings and the reasons for directing Rule 54(b) judgments. . . . While we will not require a trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment, we will look with disfavor on such judgment. *Indeed, unless the reason the judgment was granted is clear from the record, we will not search for a justification, but will vacate the appeal.*

*Cox v. Howard, Weil, Labouisse, Friedrichs Inc.*, 512 So. 2d 897, 900-01 (Miss. 1987) (emphasis added).

¶48. Here, the circuit court's order gave no specific reasons and made no findings as to why judgment should be entered. Rather, the court simply adopted a proposed order that contained no reasons or findings. We "look with disfavor" on such unexplained judgments. *Id.* at 901. Moreover, the reason why the judgment was entered is not "clear from the record." *Id.* Rather, it appears the judgment was entered simply because the parties themselves decided—nineteen months after the ruling was certified as "final," and only after an unsuccessful petition for an interlocutory appeal—that they wanted an appellate court to weigh in on certain issues in their case. Because the circuit court gave no reasons and made no findings, and because the reason the judgment was entered is not "clear from the record,"

27

we should vacate the judgment and dismiss the appeal.  *Id.*

¶49.    Even more problematic, the agreed order fails even "the purely mechanical test of Rule 54(b)."  *Id.* at 900.  That is, the order failed to make an "expressed determination that there is no just reason for delay."  M.R.C.P. 54(b).  Although there does not appear to be a Mississippi case directly on point, a clear majority of federal appellate courts, interpreting the substantially similar federal rule,[13] have held that an appeal must be dismissed if the trial court fails to make such an express determination.  For example, the United States Court of Appeals for the Third Circuit stated:

> [E]ven in a case . . . in which a district court clearly intends to enter judgment pursuant to Rule 54(b), it must state expressly that it has determined that there is no just reason for delay.  If it fails to do so, that judgment is not a final judgment under Rule 54(b), and we do not have jurisdiction over an appeal from that judgment.  We note that although we part ways with the Court of Appeals for the Fifth Circuit on this issue,[14] our decision in this case aligns us with the positions of the Courts of Appeals for the Second, Ninth, Tenth, and District of Columbia Circuits.

---

[13] There are only stylistic differences between our rule and the federal rule.  Federal Rule 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court *expressly determines* that there is no just reason for delay."  Fed. R. Civ. P. 54(b) (emphasis added).  Mississippi Rule 54(b) provides that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an expressed determination* that there is no just reason for delay and upon an expressed direction for the entry of the judgment."  M.R.C.P. 54(b) (emphasis added).  Prior to a general restyling of the Federal Rules of Civil Procedure in 2007, the relevant parts of the federal rule and state rule were identical except that the federal rule required an "express determination" rather than an "expressed determination."

[14] In *Kelly v. Lee's Old Fashioned Hamburgers Inc.*, 908 F.2d 1218 (5th Cir. 1990) (en banc), the United States Court of Appeals for the Fifth Circuit held—with seven judges dissenting—that an appeal could proceed under Rule 54(b) even though the district judge failed to make an express determination that there was no just reason for delay.  The Fifth Circuit appears to be alone or in a distinct minority on this issue.

*Elliott v. Archdiocese of New York*, 682 F.3d 213, 224 (3d Cir. 2012) (collecting cases).

Subsequently, the United States Court of Appeals for the Sixth Circuit also adopted the

majority view, stating:

> We agree with the Third Circuit that "where an order purports to certify a judgment as final under Rule 54(b) but lacks the express determination that the rule requires, a court of appeals lacks jurisdiction over the order because it is not a 'final' judgment under . . . Rule 54(b) . . . ."

*EJS Props. LLC v. City of Toledo*, 689 F.3d 535, 537-38 (6th Cir. 2012) (quoting *Elliott*, 682

F.3d at 224).  As these courts have recognized,  an "express determination" must—by

definition—be "directly and distinctly stated," not merely "implied."  *Elliott*, 682 F.3d at

225-26 (quoting *Webster's Third New International Dictionary* 803 (Merriam-Webster

1986)); *see also Kelly*, 908 F.2d at 1222 (Smith, J., dissenting) ("The majority . . . reads the

rule either as though the word 'express' did not appear, or (similarly) as though 'express'

meant the same thing as 'implied.'").  The plain text of Rule 54(b) requires an "expressed

determination" and does not permit an appeal to proceed based on a supposedly implied or

unstated determination.  Because the circuit court made no "expressed determination," the

appeal should be dismissed.[15]

_____

[15] The appeal should be dismissed for the threshold reason that the circuit court's order failed to comply with Rule 54(b), but I would also hold that the circuit court's underlying ruling granting partial summary judgment was not appropriate for certification. To be eligible for certification under Rule 54(b), a ruling must finally "decide a *claim* between the . . . parties." *Ne. Mental Health Mental Retardation Comm'n v. Cleveland*, 126 So. 3d 1020, 1024 (¶15) (Miss. Ct. App. 2013) (emphasis added).  A ruling that "merely decide[s] an issue"—e.g., "whether [a] contract [is] enforceable"—but does not "fully resolve[]" any claim is not eligible for certification. *Id.*; *see also Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 939 (7th Cir. 2005) ("Rule 54(b) is not intended to provide an option to the district court to certify issues for interlocutory appeal.  Rather, Rule 54(b) allows appeal without delay of claims that are truly separate and distinct from those that remain pending

## II.    Merits

¶50.    I would dismiss this appeal for lack of an appealable judgment, but since a majority of this Court's judges find that we have appellate jurisdiction and decide the appeal on the merits, I will also comment briefly on the merits of the appeal.

¶51.    Although I agree with Merrill that the terms "prospects" and "proposed insured" in paragraphs 7.b and 7.d of the parties' contract are undefined and ambiguous, the remaining terms of paragraphs 7.b, 7.c, and 7.d are not so facially ambiguous or conflicting as to be unenforceable as a matter of law.  Paragraph 7.b otherwise provides that for twenty-four months following the termination of his employment with Allen & Smith, Merrill may not solicit or accept insurance business from any of Allen & Smith's "customers" or "insureds." Paragraph 7.c provides, in relevant part, that during the same time period, Merrill may not be a "principal" of an insurance agency within fifty miles of Allen & Smith's offices in Gulfport and Waveland.    Paragraph 7.c further states that Merrill "may undertake employment by an insurance agency without violating this covenant provided he is not a principal of the agency."  Finally, paragraph 7.d otherwise provides that any telephonic or written communications by Merrill to any of Allen & Smith's customers within the same defined geographic area will be deemed a violation of the agreement.  In summary, aside

---

in the district court, where 'separate' means having minimal factual overlap." (citation omitted)).  Here, Allen & Smith's complaint includes one claim (Count Six) for breach of contract.  The circuit court ruled that certain provisions of the parties' contract were unenforceable, but the court held that whether Merrill violated related provisions in the same paragraph of the agreement was "a fact question for the jury to determine."  That ruling was not eligible for certification under Rule 54(b) because it did not fully and finally resolve any distinct *claim* between the parties.  *Cleveland*, 126 So. 3d at 1024 (¶¶15-16).

from the ambiguous terms "prospects" and "proposed insured," these three paragraphs simply prohibit Merrill from soliciting or accepting business from Allen & Smith's existing customers and from becoming a principal in an insurance agency within fifty miles of Allen & Smith's offices for a period of twenty-four months. To that extent, the provisions are not ambiguous, nor are they unenforceable as a matter of law.[16]

¶52.    The lead opinion holds that the presence of two ambiguous terms—"prospects" and "proposed insured"—renders paragraphs 7.b, 7.c, and 7.d unenforceable *in their entirety* because "this Court is **not** in the business of drafting contracts after the fact." *Ante* at ¶38. However, Mississippi law *does* allow a court to modify the scope of a covenant not to compete and enforce it to the extent it is reasonable.[17] Moreover, "Mississippi case law . . .

---

[16] Indeed, in *Kennedy v. Metropolitan Life Insurance Co.*, 759 So. 2d 362 (Miss. 2000), the Mississippi Supreme Court stated (a) that "courts have often enforced non-competition agreements which clearly prohibit an employee from practicing his trade at all within a given geographical area for a specified period" and (b) that "a non-compete provision which prohibits an ex-employee from accepting business with his former customers may, in appropriate cases, constitute a reasonable and enforceable non-compete provision." *Id.* at 366-67.

[17] *See Redd Pest Control Co. v. Heatherly*, 248 Miss. 34, 42, 157 So. 2d 133, 135 (1963) (holding that "an agreement restricting competition which is reasonable as to part of the territory described in the agreement but unreasonable as to the rest should be enforced as to the reasonable part"); *Hensley v. E. R. Carpenter Co.*, 633 F.2d 1106, 1110 (5th Cir. 1980) ("Under Mississippi law, when the territorial scope of a covenant not to compete is unreasonable, the covenant may nevertheless be enforced within an area that is reasonable."); *Herring Gas Co. v. Magee*, 813 F. Supp. 1239, 1245 (S.D. Miss. 1993) ("If a court finds that the limitations contained in a covenant not to compete are unreasonable, then the court will modify the limitations so that they are reasonable."), *aff'd*, 22 F.3d 603 (5th Cir. 1994); *Taylor v. Cordis Corp.*, 634 F. Supp. 1242, 1249 (S.D. Miss. 1986) ("[T]he fact that the scope of the territory to which the non-competition agreement would apply was not precisely defined geographically does not void the agreement. Under such circumstances, the court may reform the scope of the agreement to cover a reasonable area wherein [the former employer] can prove the economic justification for its restraint . . . .").

holds that if a court strikes a portion of an agreement as being void, the remainder of the contract is binding." *Russell v. Performance Toyota Inc.*, 826 So. 2d 719, 725 (¶21) (Miss. 2002). Therefore, we should disregard any impermissibly ambiguous terms in the parties' contract and enforce the remainder of the contract.[18]

¶53. Indeed, the parties themselves expressly *agreed* that "[t]he invalidity or unenforceability of any particular provision of this Agreement shall not affect the validity of any of the other provisions . . . , and this Agreement shall be construed in all respects as though such invalid or unenforceable provisions were omitted." Merrill and Allen & Smith also more specifically agreed their contract's non-competition and non-solicitation provisions could "be enforced by an injunction to the full extent thereof, *or such lesser extent as a court of competent jurisdiction may deem just and proper for the reasonable protection of the rights and interests of* [*Allen & Smith*]." (Emphasis added). Accordingly, the lead opinion's refusal to enforce the unambiguous portions of the parties' agreement is also contrary to the clear terms of the parties' agreement.

¶54. In summary, we should dismiss this appeal for lack of a properly certified final judgment and, hence, lack of appellate jurisdiction. In the alternative, if we ignore the improper certification and reach the merits, we should reverse the circuit court's determination that paragraphs 7.b, 7.c, and 7.d are impermissibly ambiguous and facially

---

[18] *See Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 290-91 (5th Cir. 2012) (examining Louisiana law and then reasoning that even if "restrictions on 'prospective' customers" were "impermissibly ambiguous" and unenforceable, the remainder of the non-competition agreement was enforceable against ex-employees who had solicited their former employer's "*existing*" customers).

unenforceable.  I respectfully dissent.

**BARNES, C.J., AND McCARTY, J., JOIN THIS OPINION.  CARLTON, P.J., AND EMFINGER, J., JOIN THIS OPINION IN PART II.**